[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Local 1042, AFSCME, Council 4, AFL-CIO is an employee organization (Union) under the Municipal Employees Relations Act ("MERA"), General Statutes § 7-467, et seq., which represents custodial and maintenance employees of the Norwalk Board of Education ("Norwalk"), for purposes of collective bargaining
On June 14, 1995, the Union filed a complaint with the Connecticut State Board of Labor Relations ("CSBLR") alleging CT Page 3126 that Norwalk had engaged in practices prohibited by § 7-470
of MERA by unilaterally changing the notice procedure for leaving the workplace to attend administrative hearings.
Following unsuccessful efforts to conciliate the complaint the matter was heard by the CSBLR on March 24, 1997. The Union and Norwalk appeared through counsel, presented evidence including the examination and cross-examination of witnesses. Briefs were submitted to CSBLR up until May 5, 1997. The CSBLR on March 11, 1998, issued Decision No. 3579 dismissing the Union's complaint.
The Union appealed the CSBLR decision pursuant to the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§4-166 et seq. and 4-183 on April 15, 1998. The administrative record was filed on August 10, 1998. Briefs were filed by the plaintiff on October 28, 1998, Norwalk on December 3, 1998 and CSBLR on January 4, 1999. The parties were heard in oral argument on February 23, 1999.
The Union is aggrieved by the CSBLR's dismissal of their complaint.
The facts which are not essentially in dispute are set forth in the decision's Findings of Fact. Substantial evidence in the Record supports each of the "Findings of Fact." Thus, the facts of the case are:
 1. The School Board is an employer within the meaning of the Act.
 2. The Union is an employee organization within the meaning of the Act and at all material times has represented a bargaining unit comprising custodial and maintenance employees of the School Board.
3. The School Board owns or occupies twenty (20) buildings.
 4. On October 13, 1992 Facilities Manager Mark Gorian (Gorian) issued a document to "All Principals and Head Custodians" which stated:
As a reminder to all, we utilize a small staff of custodial floaters to provide coverage throughout the system during periods of illness, absence, etc. It is CT Page 3127 expected that a school request a floater to cover during these periods before assigning one of their own custodians to cover on an overtime basis.
 With the above in mind, please ensure that you call us immediately, upon notification of an absence to your staff. If we are unable to provide you with a floater, you will be authorized to use your existing station an overtime basis.
Thank you for your assistance. (Ex. 1).
 5. On March 24, 1993, Gorian issued another document to "ball principals and head custodians" which stated:
 As a reminder we utilize a small staff of custodial floaters to provide coverage throughout the system during periods of illness, absence, etc. It is expected that your school request a floater from this office before assigning [sic] your own custodian on an overtime basis.
 Please be sure that you call us immediately, upon notification of an absence to your staff. If we are unable to provide you with a floater, you will then be authorized to use your existing station an overtime basis. Thank you for your assistance. (Ex. 2) (emphasis in original).
 6. During the latter part of the 1993-1994 school year, the number of administrative hearings before the Labor Board and the State Board of Mediation and Arbitration (the SBMA), involving members of the bargaining unit, substantially increased.
 7. During the end of the school year in 1994, and the following fall of 1994, Gorian received complaints on at least three (3) occasions that the principals of various schools in the Norwalk system were notified on the day of the hearing that an employee would be absent to attend a Labor Board or SBMA hearing.
8. The untimely notice provided by bargaining unit members caused problems for the School Board in that it had difficulty finding adequate coverage, the remaining CT Page 3128 employees on the jobs were sometimes stalled in their planned tasks, and the School Board incurred increased overtime expenses. (Tr. 143-144).
 9. On May 24, 1995, Superintendent Ralph E. Sloan (Sloan) issued a memorandum to "Members of Local 1042" which stated:
 It has been brought to the attention of the Norwalk Board of Education that several members of Local 1042 have left the workplace to attend hearings before the State Board of Mediation and Arbitration or the Connecticut State Labor Board. Often times, employees leave the workplace with little or no notice to their supervisors. This presents a serious problem for coverage of that particular workplace and is disruptive. Accordingly, the Board of Education expects the following procedures to be followed.
 Because the majority of these hearings are scheduled months in advance, notification in writing of attendance at a hearing is expected one week in advance.
Employees who work in the elementary and middle schools must notify their Principal. Employees who work in the high schools must provide the Housemaster with notice. Maintenance employees must give notice to Charlie Klepacky, the Maintenance Supervisor.
 The delivery of continuous custodial and maintenance services to the Norwalk Public Schools cannot be interrupted. Failure to follow these notifications [sic] procedures will be investigated and may result in discipline. (Ex. 3).
 10. The School Board did not contact the Union or attempt to negotiate the notice procedure contained in Sloan's memorandum of May 24, 1995 prior to its implementation.
11. In correspondence dated June 6, 1995, Gorian warned John Fox (Fox), a custodian in the bargaining unit, regarding his failure to timely notify his supervisor of his anticipated absence to attend a hearing on June 5 and 7, 1995 which Gorian claimed was in violation of the policy set forth in Sloan's May 24, 1995 memorandum. In the correspondence, Gorian stated that future violations CT Page 3129 would result in a loss of pay for the time spent at the hearing. (Ex. 4).
 12. In correspondence dated November 21, 1995, Gorian warned Marcus Davis (Davis), a maintenance worker in the bargaining unit, of his failure to abide by the notification procedures set forth in Sloan's memorandum dated May 24, 1995. Gorian further warned Davis that any further violation of this policy would result in a docking of his pay. (Ex. 7).
 13. In correspondence dated September 10, 1996, Gorian advised Fox that he was being docked pay for the time spent away from the workplace while attending a Labor Board hearing on September 9, 1996. According. to the correspondence, the docking resulted from Fox's failure to provide one week's prior notice of his absence, when notice of the hearing had been sent to the parties by the Labor Board in April, 1996. (Ex. 5).
 14. Prior to the implementation of the notice policy contained Sloan's May 24, 1995 memorandum, bargaining unit members provided verbal notice of their anticipated absences as soon as possible, usually when they were notified of a hearing by the Labor Board or the SBMA or their Union president. Sometimes this was over a month in advance and at other times it was the same day as the hearing.
 15. Before the institution of the notice policy in May 1995, the School Board permitted bargaining unit members to attend the administrative hearings and paid them for the time spent at the hearings, regardless of the amount of prior notice.
 16. Since the implementation of the notice policy in May 1995, the School Board has not denied permission to any bargaining unit member to attend an administrative hearing regardless of the notice provided, but it has docked the pay of a person who failed to provide adequate notice.
(Return of Record ("ROR"), Item 6, Decision No. 3579, pp. 2-4.)
The CSBLR viewed the implementation of the policy requiring, CT Page 3130 when possible, written notice one week in advance of an absence of work for purposes of attending a labor hearing,[1] as a right retained by management.
In its appeal, the Union challenges both the legal and factual basis for the decision.
At the outset, the court notes the "standard of review for all of the plaintiff's claims on appeal. Because [the court is] reviewing the decision of an administrative agency, [the court's] review is highly deferential. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . ." (Citations omitted; internal quotation marks omitted.) Bezziniv. Dept. of Social Services, 49 Conn. App. 432, 436 (1998).
The court's "review of an agency's factual determination is constrained by General Statutes § 4-183 (1), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probate, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard CT Page 3131 is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.)New England Cable Television Assn. Inc. v. DPUC, 247 Conn. 95,117-18 (1998).
The record reveals that prior to the written one week notification policy, the Union's bargaining unit members were required to notify their supervisors of an expected absence when they received notice of the hearing. (ROR, Item 4, Transcript, pp. 83, 104; Item 6, Decision No. 2579, p. 4, ¶ 14.) An unusual volume of labor hearings in 1994 caused custodial coverage problems at many Norwalk schools. In fact, in some instances, no notice at all was given by bargaining unit members. (ROR, Item 4, Transcript, pp. 142-43.) This development brought about the May 1995 memo requiring written advance notice (ROR, Item 4, Transcript, pp. 142-43.) Thus, the record contains substantial evidence to support the conclusion that the May 1995 policy merely formalized a pre-existing notice policy. The CSBLR was free to weigh the credibility of the various witnesses.Norwich v. Norwich Fire Fighters, 173 Conn. 210, 214 (1977).
The evidence also supported the CSBLR conclusions that employees who failed to give the required written notice one week in advance were not prevented from attending hearings. The consequence was written warnings to two employees and the docking of one employee's pay for the time he missed work to attend a hearing.
The substantial evidence also establishes that discipline was not automatically imposed. The one instance of pay being docked involved a failure to provide notice when the hearing was scheduled five months in advance.
The record clearly supports the conclusion that a notice policy was being enforced through a reasonable procedure requiring one week written notice when hearings were scheduled in advance.
It is also without dispute that any discipline would be subject to the collective bargaining agreement grievance procedure which could be taken to binding arbitration. CT Page 3132
Legally the Labor Board Decision is consistent with a number of prior decisions holding that a prophylactic measure designed to ensure compliance with an existing rule or condition of employment is within management's prerogative. See Town of Stratford CSBLR Decision No. 3402; Town of West Hartford, Decision No. 2116 (1982).
It has also been long established that in order to be a mandatory subject of bargaining a unilateral change must have a substantial impact on the bargaining unit members' conditions of employment. Borough of Naugatuck, Decision No. 2874 (1990); Cityof Stamford, Decision No. 2677 (1988); East Hartford Board ofEducation, Decision No. 1664 (1978).
Requiring employees to give written notice one week in advance of absence from work to attend a labor hearing is imminently reasonable and has no substantial impact on conditions of employment. Employees are still allowed to participate in hearings and be compensated, the only burden is the minimal courtesy of advanced notice. The decision is affirmed and the appeal is dismissed.
Robert F. McWeeny, J.