[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brings this appeal from a decision of the Commission on Human Rights and Opportunities ("CHRQ") dismissing upon reconsideration his employment discrimination complaint. The appeal is authorized pursuant to General Statutes § 46a-94a[1] and the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§ 4-166 et seq. and 4-183.
On October 31, 1996, the plaintiff filed an employment discrimination complaint with the CHRO alleging that he had been terminated from his employment by Yale University effective May 28, 1996 for reasons prohibited under the Connecticut Fair CT Page 12356 Employment Practices Act §§ 46a-58 (a), 46a-60 (a)(1), 46a-60
(a)(4). The plaintiff alleged that his employment was terminated because of his sex (male) and religion (atheistic naturalist faith). The plaintiff also alleged that the termination violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the ninth amendment of the United States Constitution.
In response to the plaintiffs complaint to CHRO, Yale filed an answer on December 16, 1996 in which it indicated that the termination had been for the plaintiffs sexual harassment of a female employee of Yale.
The plaintiff replied to the answer preliminarily on December 23, 1996 and with a supplement. (Return of Record ("ROR"), pp. 108-140, 177-197.) In addition, the plaintiff filed a motion seeking a reasonable cause finding on January 14, 1997. (ROR, pp. 14 1-165.) Yale's answer included substantial information regarding the alleged history of the plaintiffs sexual harassment. (ROR, pp. 239-395.)
The CHRO is obligated under General Statutes § 46a-83 (b) to review such submissions of the parties and determine whether there was a reasonable possibility that further investigation of the plaintiffs affidavit would lead to a finding of reasonable cause. The plaintiff, by letter of January 29, 1997, was notified of the CHRO dismissal of his complaint. The dismissal letter indicates that the agency did not have jurisdiction to entertain his complaint. (ROR, p. 23.)
The plaintiff made a timely request for reconsideration. In the reconsideration, the CHRO considered the evidence in the record and determined after review of such evidence that reconsideration should be rejected and the complaint dismissed. It is from this rejection of reconsideration that plaintiff has filed his appeal. Notice of the rejection of reconsideration was issued May 8, 1997. Plaintiffs appeal was not filed until subsequent to the rejection of the reconsideration. The appeal specifically references the rejection of reconsideration decision.
In its dismissal of reconsideration, the CHRO noted with respect to the plaintiffs complaint the following:
 Complainant's argument in his reconsideration request that "atheism" is a religion protected under the governing CT Page 12357 statutes is misplaced. It is clear from the complaint affidavit and the information in the case record that complainant does not even articulate any reasonable basis from which it might be concluded that he was discharged because he was an atheist as that term is commonly defined. (Webster's New Collegiate Dictionary, 7th Edition, defines an atheist as "one who denies the existence of God and rejects all religious faith and practice." Furthermore, it should be noted that complainant claims his religion is "atheistic naturalism" which is not defined, nor is it the creed at issue in the multiple cases cited by complainant, which is simply "atheism").
 The record is clear that complainant was discharged for willful misconduct based upon a female employees' complaint which detailed continuous unwelcome conduct on complainant's part occurring over an extended period. The respondent conducted an investigation which concluded that complainant had made persistent efforts to establish inappropriate contact with this employee. He was counseled, and when he continued was issued a written warning. Following this warning respondent indicated that on two separate occasions complainant stated he was unwilling to refrain from all non business interactions with the employee and was, therefore, terminated.
 Complainant does not dispute that he refused to refrain from all non business contact with this employee. In his complaint affidavit, complainant alleges that sexual harassment as defined by state and federal statutes "are the fruits of concepts and ideas which are a false religion and a religion hostile to the beliefs and practices of complainant."
 Complainant's convoluted argument appears to be that he considers the definition of "sexual harassment" to be a "religion" contrary to his own "religious belief" and that he, therefore, has a "constitutional right," to "sexually harass" women. Pertaining to his cited class basis of "sex-male, "complainant appears to argue that it is the governing statutes that are discriminatory. His sole argument in his reconsideration request is that the discrimination laws as defined by statute and interpreted by the courts are "unfair" since most sexual harassment complaint are filed by women against men and because the CT Page 12358 courts and legislators are biased and moved by "feminazi extremists."
 Since this Commission has no authority to change its governing statutes or the interpretation they are given by the courts, the finding that there is no reasonable possibility that further investigation will result in a finding of reasonable cause is clearly supported by the record.
(ROR, pp. 8-10.)
At the outset, the court notes the "standard of review for all of the plaintiffs claims on appeal. Because [the court is] reviewing the decision of an administrative agency, [the court' si review is highly deferential. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . ." (Citations omitted; internal quotation marks omitted.) Bezzini v. Dept. of Social Services,49 Conn. App. 432, 436 (1998).
The CHRO's factual determinations are to be accorded considerable weight. Connecticut Hospital Assn. v. Commission onHospitals Health Care, 200 Conn. 133, 140 (1986). In reviewing a CHRO decision, the Superior Court is not to try the case de novo, adjudicate facts or substitute its own judgment in discretion for that of the investigator. Billings v. Commissionon Human Rinhts Ooportunties, 18 Conn. App. 241, 243 (1989).
This is especially the case in an employment discrimination context, where the employer has articulated a legitimate non-discriminatory reason. Clearly, disciplinary action in support of a fellow employee's complaint of sexual harassment is CT Page 12359 a legitimate non-discriminatory reason for an employment decision. See Texas Dept. of Community Affairs v. Burdine,450 U.S. 248, 254-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The employer bears only a burden of production, not of persuasion, with respect to rebutting a prima facie case of discrimination. The employer need only set forth the reason for the plaintiffs termination which would constitute a legitimate non-discriminatory reason. The mere production of such evidence rebuts the prima facie case and would require the plaintiff to establish that the employer's proffered reason was a mere pretext for a discriminatory motivation. Here, the plaintiff does not dispute that Yale had a policy prohibiting sexual harassment or that he engaged in behavior which a fellow employee found offensive.
The plaintiff argues that prohibiting sexual harassment somehow impinges upon his religion. Apparently, the plaintiffs "creed" enables him to decipher cryptic messages from what to others are quite clear admonitions and discouragement.[2] The plaintiff fails to articulate how the protection of an employee from a sexually hostile work environment interferes with the practice of his atheist naturalistic creed. The plaintiff also fails to cite a scintilla of evidence which would indicate that anyone was aware of his belief system.
The plaintiffs pretext claim is outlined in hundreds of pages of his briefs. Included in the discussion are President Clinton, the Patty Hearst trial, the "unibomber," the FBI, Secret Service, Yale University, various Yale Police officials, the Symbionese Liberation Army, "feminazi extremists," etc. Evidence supporting these theories is not apparent from the record, or at least from its plain text. Accordingly, the court concurs with the CHRO that there was no possibility that such evidence would be developed by further investigation of this employment discrimination complaint. Thus, the plaintiff did not have a viable employment discrimination complaint. The protection of an employee subject to a campaign of sexual harassment over three years by an employee who declines to desist, is a legitimate reason for the termination of employment decision.
The decision under § 46a-83 (b). the Merit Assessment Review ("MAR")' is not a final decision after a hearing. They are reviewable under the UAPA only as required by § 46a-94a. The time parameters for a MAR established under § 46a-83 (Public Act 1994, No. 94-23 8) prohibit a full hearing at these steps of the CT Page 12360 investigation. The legislature clearly did not intend that all employment discrimination complaint cases proceed to a full hearing. Our Supreme Court has specifically noted that the purpose of the reasonable cause determination is to protect the respondents from having to go through the hearing process in every case. Dufriene v. Commission on Human Rights Opportunities, 236 Conn. 250, 26 1-62 (1996); Adriani v.Commission on Human Rights Opportunities, 220 Conn. 307. 317 (1991). Waterbury v. Commission on Human Rights Opportunities,160 Conn. 226, 235 (1971). Threshold requirements before a hearing is held do not violate the constitutional mandates for due process. Weinberger v. Hynson, Westcott Dunning, Inc.,412 U.S. 609, 621, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973). The process afforded the plaintiff meets the standard for fundamental fairness mandated for administrative proceedings. Grimes v.Conservation Commission, 243 Conn. 266, 273 n.h (1973).
The decision of the CHRO is affirmed and the appeal is dismissed.
Robert F. McWeeny, J.