[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, John E. DeMello, brings this appeal from a final CT Page 338 decision of the defendant, Commission on Human Rights and Opportunities ("CHRO"), dismissing his complaint of employment discrimination based on physical disability by his former employer, the Town of Cheshire. The plaintiffs complaint, in addition to the allegations of disability discrimination in violation of General Statutes § 46a-60 (a)(1) and 42 U.S.C. § 12101
et seq., the Americans With Disabilities Act ("ADA"), complains of harassment for his union activities as President of the Cheshire Police Union. The anti-union bias would be prohibited under the Municipal Employees Relations Act, General Statutes § 7-470 et seq. and subject to remediation by the Connecticut State Board of Labor Relations pursuant to that act. Accordingly, the retaliation complaint for union activities is not within the purview of the CHRO.
The plaintiffs alleges the following facts in his administrative appeal, which are not disputed. The plaintiff commenced employment as a police officer with the Town of Cheshire on August 5, 1985. On May 9, 1997, the plaintiff was involuntarily placed on "injury leave" as a police office by the Town of Cheshire. He was terminated from his employment as a police officer on October 3, 1997 and was involuntarily retired as a police officer by the Town of Cheshire on October 4, 1997. The plaintiff receives a hypertension disability retirement benefit. On December 30, 1997, the plaintiff filed a discrimination complaint with the CHRO. Pursuant to General Statutes § 46a-83 (b), the plaintiffs complaint was assigned to a CHRO investigator for a merit assessment review. The investigator reviewed extensive medical information regarding the plaintiffs condition of hypertension and disability ratings by both his personal physician and an independent medical examiner. The plaintiff did not provide the Town of Cheshire prior to his termination with any information which would have rebutted the disability ratings of the physicians. On March 31, 1998, the investigator, pursuant to § 46a-83 (b), recommended the dismissal of the plaintiffs complaint concluding that there was no reasonable possibility that further investigation would result in a finding of reasonable cause. On April 13, 1998, the plaintiff requested reconsideration of the dismissal. The CHRO rejected this request.
Thereafter, the plaintiff, on July 30, 1998, commenced this timely administrative appeal pursuant to the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§4-166 et seq. and 4-183. CT Page 339
At the outset, the court notes the "standard of review for all of the plaintiffs claims on appeal. Because [the court is] reviewing the decision of an administrative agency, [the court's] review is highly deferential. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . ." (Citations omitted; internal quotation marks omitted.) Bezzini v. Dept. of Social Services,49 Conn. App. 432, 436 (1998).
The court's "review of an agency's factual determination is constrained by General Statutes § 4-183 (j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probate, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." CT Page 340 (Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v. DPUC,247 Conn. 95, 117-18 (1998).
Section 46a-83 (b) authorizes the CHRO to dismiss any complaint if after reviewing the "complaint, the respondent's answer and the responses to the commission's requests for information, if any, and the complainant's comments, if any, to the respondent's answer and information responses . . . there is no reasonable possibility that investigating the complaint will result in a finding of reasonable cause. . . ."
The record reveals the following undisputed evidence. The plaintiff commenced his employment as a police officer with the Town of Cheshire in August of 1985. In 1993, the plaintiff put in a claim for worker's compensation based on his hypertension. (Return of Record, ("ROR"), p. 269.) The plaintiff's treating physicians noted that they had difficulty in controlling his hypertension despite extensive and varied medication regimes. (ROR, pp. 220, 228, 235-36, 263.) The plaintiff had a family history that suggested a substantial risk of heart attack or stoke: "his father died at age 72 with a stroke and had a heart attack. His mother died at age 44 with a cerebral hemorrhage. He had two maternal uncles who died of heart attacks in their 50's. . . ." (ROR, p. 235.) His physicians were of the opinion that he had labile hypertension which was related to stress of his employment as a police officer. (ROR, pp. 94, 228, 235, 259.) The plaintiffs physical condition caused him to frequently miss work. In 1995, he was out from February 9 to March 5, from May 30 to July 2 and from November 28 to December 31. (ROR, pp. 262, 270, 271, 273.) In 1996, he missed from February 15 to March 14 and from December 6 through December 19. (ROR, pp. 274, 276.) In February 1996, he was diagnosed as suffering from "severe uncontrolled hypertension." (ROR, p. 277.) In 1997, the plaintiff was out of work in February and March. (ROR, pp. 278, 280-81.) In October of 1993, the plaintiffs condition resulted in a 5% disability, class I rating according to the American Heart Association classification. (ROR, p. 267.) His rating was 10% impairment in March, 1994. (ROR, p. 263.) In 1997, the plaintiff was rated a class I with a 32% impairment of the whole person as determined by the Evaluation of Permanent Impairment by the American Medical Association. (ROR, p. 259.) In April of 1997, his doctor opined:
 Mr. DeMello is having increasing stress on his job which is really CT Page 341 affecting his health and endangering him to have a heart attack, perhaps even a stroke. I just recently changed his medications again to control his high blood pressure.
 Mr. DeMello was seen on April 17th as an emergency visit, complaining of severe headache over his right eye. The patient is stressed out and, in addition, tired out. I do believe the time has come for this patient, after a total of 20 years of police work, to change to a different occupation, less we endanger him further. (ROR, p. 221.)
When the Town of Chesire received this letter in May of 1997, the plaintiff was placed on injury leave pending the receipt of an independent medical examination ("IME"). (ROR, pp. 187-88.) The IME was conducted by Dr. Anthony, the Chief of Cardiology at St. Mary's Waterbury Hospital. Dr. Anthony concluded: "I would agree with Dr. Siegfried Kra's report of April 18, 1997 that Mr. DeMello should consider a less stressful occupation for his own long term health benefit." (ROR, p. 236.) The doctor further noted that Mr. DeMello worried about having a heart attack or a stroke if he kept working, and that he would be in danger should he be put in a position of having to defend himself or the public. Receiving the IME, the Town of Cheshire further inquired of Dr. Anthony whether the plaintiffs condition could be rectified by April 18, 1998 through any rehabilitation program or whether his disabling condition would be aggravated or continue if he was to resume working again as a police officer. (ROR, p. 243.) Dr. Anthony's response indicated that it was unlikely that the plaintiffs medical condition would be rectified by April 18, 1998. (ROR, p. 244.)
On July 29, 1997, the police chief initiated the application process for the plaintiffs disability retirement. This application was approved by the Town of Cheshire retirement board on August 20, 1997. (ROR, pp. 249, 254.) A letter was sent to the plaintiff advising him of other employment options with the Town of Cheshire on September 12, 1997. (ROR, pp. 256, 257.) The plaintiff did not respond to such letter and was terminated effective October 3, 1997. Based on the foregoing, the court finds that there is substantial evidence in the record to support the CHRO's conclusion that the plaintiffs dismissal was the result of his inability to perform police work.
The plaintiff points to another report by Dr. Kra dated February 19, 1998 which indicates the plaintiffs ability to continue doing police work. (ROR, p. 67.) The CHRO, however, CT Page 342 correctly noted in its dismissal decision, (ROR, p. 145-46), that this information was not available to the Town of Cheshire when it made its decision to terminate the plaintiff in October of 1997. It was reasonable for the Town of Cheshire and for the CHRO to conclude that plaintiff did not dispute his disability status in time, prior to his termination.
The CHRO also correctly points out that the assertion of a disability claim requires a cooperative effort between the employer and employee. Beck v. University of Wisconsin Board ofRegents, 75 F.3d 1130, 1135 (7th Cir. 1996) (stating ADA envisions an interactive process that requires participation by both employer and employee); McAlpin v. National Semi-ConductorCorp., 921 F. Sup. 1518, 1525 (N.D. Tex. 1996) (stating employer and employee share responsibility for determining the appropriate reasonable accommodation under the ADA).
In this instance, the plaintiff did not dispute his own physician's report or the IME results until many months after his termination and award of a disability retirement.
The plaintiff has failed to demonstrate that the CHRO erred in its decision.
Accordingly, the final decision of the CHRO is affirmed and the plaintiff's administrative appeal is hereby dismissed.
Robert F. McWeeny, J.