[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case comes before the court as an administrative appeal from a declaratory ruling issued by the defendant, Connecticut Department of Environmental Protection ("DEP"). The appeal is brought by the plaintiff, MacDermid, Incorporated ("MacDermid") pursuant to the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§ 4-166 et seq., 4-183 (a). For the reasons set forth below, the court finds the issues in favor of the DEP.
The case involves the treatment of a chemical product sold by MacDermid. The product "Ultra Etch" is sold to the printed circuit board industry, which uses it to dissolve copper from printed circuit boards. In the course of being used, the Ultra Etch becomes contaminated with copper salts which eventually render the Ultra Etch unusable. The users of the Ultra Etch product are contractually obligated to return the spent Ultra Etch, known as spent etchant, to MacDermid.
The spent etchant is corrosive and has been considered and managed by all parties as a hazardous waste pursuant to § 22a-449a(c)-101(a)(1) of the Regulations of Connecticut State Agencies, which incorporates by reference 40 C.F.R. § 261.22.
MacDermid stores the returned spent etchant in either a drum or a tank before pumping it into a "reactor tank". Caustic soda is added to the reactor tank and heat is then applied causing a chemical reaction in which copper oxide precipitates out and anhydrous ammonia gas is generated. The ammonia gas is CT Page 4250 transferred from the reactor tank to another tank, known as a "scrub tank", where the ammonia gas reacts with hydrochloric acid and changes back into a liquid to form ammonium chloride. The copper oxide in the reactor tank is allowed to settle, is washed, and is discharged to a filter press for final processing. The ammonium chloride and copper oxide produced from spent etchant are sold to others as well as used by MacDermid in manufacturing other products.
On August 9, 1994, the DEP issued two permits to MacDermid. One permit issued under General Statutes § 22a-449 (c) is a hazardous permit which authorized MacDermid, among other things, to store spent etchant prior to recycling. The other permit issued pursuant to General Statutes § 22a-454 regulates the process by which MacDermid recycles spent etchant.
MacDermid filed a petition for declaratory rulings ("petition") with the DEP on October 14, 1997 for the purpose of determining whether spent etchant which is used as an ingredient in a manufacturing process to produce commercial chemical products at its Waterbury, Connecticut facility is a regulated "waste" under State law. The petition was supplemented with submissions dated June 2, 1998 ("6/2/98 supplement"), June 5. 1998 ("6/5/98 supplement"), June 13, 1998 ("6/13/98 supplement"), and July 7, 1998 ("7/7/98 supplement"). The submissions were provided in response to the DEP's request for additional information concerning the use to which MacDermid's products were put by its customers.
MacDermid's petition requested the Department issue the following declaratory rulings:
 1. The spent etchant which MacDermid uses as an ingredient in a manufacturing process to make new end-products at its Waterbury, Connecticut facility is not a "solid waste" pursuant to the provisions of 40 C.F.R. § 261.2 (e)(1)(i).
 2. Where the spent etchant used by MacDermid is not a "solid waste" pursuant to the provisions of 40 C.F.R. § 261.2
(e)(1)(i), it is not necessary to manage that material as a hazardous waste while it is being transported to, stored at and used in a manufacturing process at MacDermid's Waterbury, Connecticut facility.
3. Where the spent etchant used by MacDermid is not a "solid CT Page 4251 waste" pursuant to the provisions of 40 C.F.R. § 261.2
(e)(1)(i), it is not necessary to manage that material as a Connecticut Regulated Waste under C.G.S. § 22a-454 while it is being transported to, stored at and used in a manufacturing process at MacDermid's Waterbury, Connecticut facility.
 4. MacDermid's customers are not required to manage the spent etchant which they send to MacDermid as either a hazardous waste or a Connecticut Regulated Waste while it is being stored pending shipment to MacDermid's Waterbury facility because the spent etchant is not a "solid waste" pursuant to the provisions of 40 C.F.R. § 261.2 (e)(1)(i).
 (Appellant's Brief with Regard to the Review of the Department's Four Declaratory Rulings, p. 2; see also Return of Record ("ROR"), Item 25, October 8, 1998 Declaratory Ruling, p. 4.)
The DEP, in response to the petition and proceedings thereon, issued a declaratory ruling on October 8, 1998. The declaratory ruling is in the form of a 19 page decision which concludes as follows: "Based upon the foregoing, I rule that pursuant to Conn. Gen. Stat. § 4-176, the spent etchant which both MacDermid and its customers manage in the maimer described in the Petition is and must be managed as a hazardous waste under the state's RCRA regulations and is subject to regulation under Conn. Gen. Stat. § 22a-454." (ROR, Item 25, October 8, 1998 Declaratory Ruling, p. 18-19.) It is this declaratory judgment which is the subject of the present administrative appeal.
The plaintiff MacDermid filed its administrative appeal on November 9, 1998. The record in the case was filed on January 20, 1999. The plaintiff filed its brief on March 5, 1999 and the defendant DEP on May 13, 1999. The parties were heard in oral argument on August 5, 1999. The parties consented in writing to an extension of the 120-day period in which the Court is required to render a decision.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the CT Page 4252 administrative findings, inferences, conclusions, or decisions are. . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency. . . ." (Citations omitted.) Jutkowitz v.Department of Health Services, 220 Conn. 86, 94 (1991).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency]. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion. . . ." (Citations omitted; internal quotation marks omitted.) Board of Education v. Freedom of InformationCommission, 208 Conn. 442, 452 (1988).
At the outset, the court notes the "standard of review for all of the plaintiff's claims on appeal. Because [the court is] reviewing the decision of an administrative agency, [the court's] review is highly deferential. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . ." (Citations omitted; internal quotation marks omitted.) Bezzini v. Dept. of Social Services,49 Conn. App. 432, 436 (1998); see also Connecticut Light Power Companyv. Texas-Ohio Power, Inc., 243 Conn. 635, 642-43 (1998), Assn. ofNot-For-Profit Providers for the Aging v. Dept. of SocialServices, 244 Conn. 378, 389 (1998).
In its lengthy and thorough brief, MacDermid essentially argues CT Page 4253 that the returned spent etchant is not subject to regulation as a hazardous waste. The determination of this issue requires an extensive review of an elaborate system of state and federal regulation.
The basic federal legislation concerning hazardous waste is the Resource, Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6900 et seq. The purposes of the Act include regulating the treatment, storage, transportation and disposal of hazardous waste and promoting a national research and development program for methods of collection, separation, recovery and recycling of solid waste. 42 U.S.C. § 6902 (6) and 6909(4). The federal RCRA and regulations promulgated pursuant to it, have been described as creating a minimum level of requirements for management of hazardous waste. U.S. v. Marine Shale Processors, 81 F.3d 1361,1367 (5th Cir. 1996). States are specifically authorized to impose regulations more exacting than those set out in the federal RCRA regulations. 42 U.S.C. § 6929. The defendant Connecticut DEP is authorized pursuant to General Statutes § 22a-449c to adopt and enforce regulations to carry out the intent of §§ 22a-448 to 22a-454 inclusive and subtitle C of the Resource, Conservation and Recovery Act of 1976. In furtherance of this legislative direction, the DEP requires a permit for any person to dispose of hazardous waste. The commissioner of the DEP has also enacted the Connecticut RCRA regulations. See Regs., Conn. State Agencies § 22a-449 (c)-100 et. seq. Included within these state regulations are incorporated portions of the 1989 federal RCRA regulations.
The DEP's regulation of hazardous waste is also specifically authorized under General Statutes § 22a-454, which requires persons in the business of collecting, storing, treating or remediating "waste oil or petroleum or chemical liquids or hazardous wastes" to obtain a permit. The § 22a-454 requirements predate the Connecticut RCRA regulations and are more expansive in that they are not on their face limited to hazardous waste.
In its petition for declaratory judgment, MacDermid specifically references the regulatory scheme in its requested rulings. The first ruling requested a determination that spent etchant is not a "solid waste" under 40 C.F.R. § 261.2 (e)(1)(i), which is incorporated by reference in § 22a-449 (c)-101 of the Regulations of Connecticut State Agencies. The second requested ruling is that in finding spent etchant is not a "solid waste" under 40 C.F.R. § 261.2 (e)(1)(i) it is thus not necessary to CT Page 4254 manage it as a hazardous waste under Connecticut's RCRA regulations while at the MacDermid facility. The third requested ruling similarly based on the finding that spent etchant is not a "solid waste" under 40 C.F.R. § 261.2 (e)(1)(i) is thus exempt from regulations under General Statutes § 22a-454 while at the MacDermid's facility. The final requested ruling deals with the treatment of spent etchant by MacDermid's customers prior to its shipment to MacDermid's facility. The four rulings are determined by the issues of whether spent etchant is hazardous waste for purposes of Connecticut's RCRA regulations and/or General Statutes § 22a-454. The DEP declaratory ruling, which is the subject of this appeal, found spent etchant a solid waste; and thus, a hazardous waste for the RCRA regulation and that even if it were exempt under RCRA it nevertheless would constitute a hazardous waste subject to regulation under § 22a-454. Section22a-449 (c)-101 of the Regulations of Connecticut State Agencies defines hazardous waste as a solid waste that is either specifically listed as hazardous or exhibits hazardous characteristics (toxic, corrosive, ignitable or reactive)referencing40 C.F.R. Part 261, which is incorporated in RCRA regulations. There does not appear to be a dispute that spent etchant exhibits the characteristic of corrosivity. Thus, the parties appropriately focus on the issue of whether the spent etchant falls within the exemption from the regulations for materials which are recycled by being "used or reused as ingredients in an industrial process to make a product, provided the materials are not being reclaimed." Regs., Conn. State Agencies § 22a-449 (c)-101, which incorporates 40 C.F.R. § 261.2
(e). MacDermid's claim is that the spent etchant is used in an industrial process to produce products. The DEP decision found that the spent etchant was being "reclaimed", and thus not within the exemption.
The determination of whether a material is a RCRA solid waste when it is recycled requires an examination of both the material itself and the recycling activity involved. See American Mining Company v. EPA, 824 F.2d 1177, 1180 (D.C. Cir. 1987).
The spent etchant is a "spent material" pursuant to40 C.F.R. § 261.1 (c)(1) which defines spent material "as any material that has been used and as a result of contamination can no longer serve the purpose for which it was produced without processing." In its petition, MacDermid represents that Ultra Etch is sold to circuit board manufacturers who use the product to remove copper from circuit boards. As a result of the use, Ultra Etch becomes contaminated with copper salts and can no longer serve the CT Page 4255 purpose for which it is produced. Spent etchant is thus a "spent material" under 40 C.F.R. § 261.1 (c)(1). Such a spent material, if reclaimed, would be a solid waste under RCRA regulations40 C.F.R. § 261.1 (c)(4); which provides that a material is reclaimed if it is processed to recover usable product, or if it is regenerated. The regeneration and processing to recover a usable product are somewhat distinct. Regeneration involves the removal of contaminants or impurities from materials so that a usable product remains. 50 Fed. Reg. §§ 614, 633. Material recovery does not involve the removal of contaminants, but rather the extraction and recovery of a usable product from a material. The regulations specifically cite the examples of removal of lead values from spent batteries and the recovery of precious metals from photo developer waste.
The DEP decision concluded that MacDermid is engaged in reclamation by material recovery from spent etchant. The decision specifically finds:
 In applying this definition, I conclude that MacDermid is engaged in reclamation by material recovery from the spent etchant. Before use, MacDermid's Ultra Etch product does not contain copper. Petition, p. 4 Ultra Etch removes copper from printed circuit boards by dissolving and holding copper in solution. Id. and July 7, 1998 submission, Exhibit 22, Tab 4. Through use Ultra Etch eventually becomes so contaminated with copper that it is rendered unusable (i.e. spent). Through its recycling process, MacDermid extracts dissolved copper from spent etchant in the form of copper oxide which it in turn uses to produce other copper-based products. Based upon these facts, I conclude that MacDermid is recovering the copper values in spent etchant; it processes spent etchant so that it can recover usable copper. The fact that MacDermid charges customers a penalty if the copper content of its spent etchant is too low further reinforces this conclusion. Petition, p. 4, fn. 1.
MacDermid also extracts another usable product, ammonia, from spent etchant. Ammonia is used to produce ammonium chloride, one of the primary active ingredients in Ultra Etch. After use, Ultra Etch can no longer dissolve the copper on printed circuit boards. Through its recycling process, MacDermid removes copper and recovers the ammonia gas present in spent etchant. While this ammonia gas is recovered during an intermediate step in the recycling process, it is just like the new ammonia gas that CT Page 4256 MacDermid adds to the scrub tank. See July 7, 1998 submission, P. 13, fn. 19. The fact that MacDermid uses the ammonia gas from the reactor tank just like the new ammonia gas it purchases reinforces the conclusion that MacDermid is recovering the ammonia values in spent etchant and is therefore engaged in reclamation. In fact, MacDermid could take the ammonia gas generated in the reactor tank out of the recycling process and save it for later use.
(ROR, Item 25, October 8, 1998 Declaratory Ruling, pp. 7-8.)
The essential claim by MacDermid is that the materials are not being reclaimed, but rather used or reused as ingredients in an industrial process to make a product and thus not solid waste pursuant to the exemption set forth in 40 C.F.R. § 261.2
(e)(1)(i).
That regulation states that a material is "used or reused" if it is: (i) employed as an ingredient (including the use as an intermediate) in an industrial process to make a product (for example, distillation bottoms from one process used as feet stock in another process). 40 C.F.R. § 261.2 (e)(1)(i). However, a material will not satisfy this condition if distinct components of the material are recovered as separate end products (as when metals are recovered from metal-containing secondary materials); or (ii) employed in a particular function or application as an effective substitute for a commercial product (for example, spent pickle liquor used as phosphorous precipitant and sludge conditioner in waste water treatment). 40 C.F.R. § 261.1 (c)(5). MacDermid's view of the manufacturing process is that the spent etchant is a raw material for the manufacturer of new products copper oxide and ammonium chloride. MacDermid notes that neither copper oxide nor ammonium chloride is present in the spent etchant before recycling.
MacDermid describes the process in which it allegedly manufacturers new-end products in the following manner:
The spent etchant which MacDermid obtains from its customers is stored in either 55 gallon drums or in one of three 8,000 gallon storage tanks depending upon whether it was returned in drums or transported in one of MacDermid's tanker trucks. When MacDermid desires to use the spent etchant to produce new end-products, it transfers a portion of the etchant from a storage tank to one of two vessels which are known as "reactor CT Page 4257 tanks." Caustic soda and heat are added. The ensuing chemical reaction is allowed to proceed for approximately 12 to 15 hours. During the reaction, copper oxide precipitates out of the spent etchant/caustic soda mixture and ammonia gas is generated.
 At the end of the reaction, the copper oxide is allowed to settle and the liquid remaining in the reactor tank is pumped into another vessel for treatment and disposal as a process wastewater. The copper oxide remaining in the reactor tank is washed and discharged to a filter press for final processing. The copper oxide is the first end-product of the MacDermid process which uses spent etchant as an ingredient.
 The ammonia gas generated in the reactor tanks is transferred to another type of tank known as a "scrub tank" as that gas is being generated. The ammonia gas is reacted with hydrochloric acid in the scrub tanks to produce ammonium chloride. That reaction occurs throughout the twelve plus hour process as the ammonia gas is being introduced into the scrub tanks. The ammonium chloride produced in the scrub tanks is the second end-product of the above described process which uses spent etchant as an ingredient.
 (Appellant's Brief with Regard to the Review of the Department's Four Declaratory Rulings, pp. 8-9.)
The DEP's treatment of these factual questions on the MacDermid process are controlled by the substantial evidence rule. "Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v. DPUC,247 Conn. 95, 117-18 (1998).
MacDermid's own exhibits provide substantial evidence that ammonia gas is present in the spent etchant and therefore is a "distinct component" of the spent etchant that is recovered as a separate end-product. Substantial evidence supports the DEP CT Page 4258 conclusion that ammonia gas is reclaimed from the spent etchant. It is a "usable product", "by-product", and "usable material". It is recovered from the spent etchant and used subsequently to make other products. It is thus reclaimed. In that it is reclaimed it is not entitled to the use/reuse exemption. This is also true with respect to the extraction of copper. MacDermid argues that copper oxide the end-product is not present in the spent etchant, which is true. Substantial evidence on the record establishes the reasonable basis of DEP conclusion that the purpose of the MacDermid processing of spent etchant is the recovery of copper values. Its combination with oxygen to make copper oxide product does not defeat the significance of the finding that copper is extracted from the spent etchant. The U.S. EPA Guidance Manual on the RCRA Regulation of Recycled Hazardous Waste indicates that an analogous process would not be subject to regulation. The DEP correctly points out that the guidance manual is not controlling in that the specific process referenced is distinguishable in that ammonia does exist in the original spent etchant returned to MacDermid.
The substantial evidence rule also resolves MacDermid's claim regarding the treatment of allegedly similar processes by other agencies or the DEP, that is evidence; but it is not weighed by the court in determining the factual conclusion reached by the agency. The review as to factual claims is only to determine if substantial evidence exists in the record to support the agency's findings. The existence in the record of contrary evidence is of little import.
The DEP decision is also supported by an analysis of the entire process which supports the determination that what MacDermid is primarily doing is waste management not the manufacturer of these products, reclaimed from the spent etchant.
The DEP decision also denies the exemption to MacDermid on the basis that it may be used to produce products applied to the land. Pursuant to § 22a-449 (c)-101 of the Regulations of Connecticut State Agencies, incorporating 40 C.F.R. § 261.2 (e)(2) the use/reuse exemption is not applicable to materials that are applied to the land. Spent materials used to produce products that are applied to the land are solid waste even if they might otherwise have been exempted under the use/reuse rule.
The factual basis for the DEP decision that the spent etchant was used to produce products applied to the land was the CT Page 4259 MacDermid petition which stated that it sold copper oxide for use as an ingredient to manufacture "products such as fungicide". MacDermid's further submissions indicate that it no longer sold copper oxide to the fungicide manufacturer, but offered it to a manufacturer who made wood preservatives. (7/7/98 submission.) The declaratory ruling found that fungicides are used to destroy fungi and in the Department's experience are often sprayed or dusted onto the land." (Decision at page 15).
MacDermid, seeking the exemption from regulation, was obligated to substantiate its claim to exemption from regulation. Regs., Conn. State Agencies § 22a-449 (c)-101, incorporating40 C.F.R. § 261.2 (f). There is sufficient evidence in the record to show that the copper oxide is incorporated in products, such as fungicide or wood preservative, applied to the land.
General Statutes § 22a-454 (a) provides in pertinent part: "No person shall engage in the business of collecting, storing or treating waste oil or petroleum or chemical liquids or hazardous wastes . . . without a permit from the commissioner." General Statutes § 22a-448 defines chemical liquids as "any chemical, chemical solution or chemical mixture in liquid form."
There is simply no basis in law for the claim that a chemical liquid such as spent etchant even if found not to be a solid waste under the State's RCRA would be exempted from regulation under § 22a-454. The history of this regulation predating the RCRA by years and its expansive language are inconsistent with the construction advocated by the plaintiff MacDermid.
The record is replete with evidence that spent etchant is a "chemical liquid" and thus subject to the provisions of General Statutes § 22a-454, whether or not it is a solid waste.
The decision below is affirmed and the appeal is dismissed.
ROBERT F. McWEENY, J.