ELEANOR BEZZINI *v.* DEPARTMENT OF
SOCIAL SERVICES
(AC 16826)

Schaller, Spear and Sullivan, Js.

Argued January 21—officially released July 21, 1998

*Michael C. Stumo*, with whom, on the brief, was *Timothy Brignole*, for the appellant (plaintiff).

*Peter L. Brown*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Eleanor Bezzini, appeals from the judgment of the trial court upholding the determination of the department of social services (department) that the plaintiff is ineligible for Title XIX medical

assistance benefits due to a transfer of assets. The principal issue is whether a transfer of assets from the plaintiff's spouse to beneficiaries other than the plaintiff, taking effect upon the death of the spouse, pursuant to the terms of a revocable inter vivos trust, renders the plaintiff ineligible for Title XIX medicaid benefits. We affirm the judgment of the trial court.

The relevant facts found by the fair hearing officer are essentially undisputed. On March 11, 1993, the plaintiff's spouse, Charles Bezzini, who had been diagnosed with prostate cancer, established a revocable inter vivos trust, naming himself as the sole beneficiary during his lifetime. Charles Bezzini named the couple's two sons, Guy Bezzini and Robert Bezzini, as the trustees and sole beneficiaries of the trust. The trust contained no provisions for the care and maintenance of the plaintiff. Charles Bezzini's will left all residuary property in his estate to the trust to be distributed in accordance with its terms.

In April, 1993, the plaintiff began receiving adult day care services at Jefferson House. Title to Charles Bezzini's home was transferred to the trust in May, 1993. During May, 1993, Charles Bezzini transferred all of the couple's remaining assets to the trust. On June 3, 1993, Charles Bezzini died. The gross value of Charles Bezzini's estate for succession tax purposes was determined to be $469,142.80. Pursuant to the terms of the trust, all assets of the trust were distributed to his two sons.

The plaintiff was cared for at home until October 8, 1993, when she was admitted to Fenwood Manor, a nursing home. She was discharged from Fenwood Manor on May 4, 1994, having incurred expenses of $33,088. The plaintiff is currently a resident of Riverside Health Center. She applied for Title XIX benefits on

February 9, 1994. By preliminary decision dated February 17, 1994, the department denied the application on the basis that a disqualifying transfer of all of the couple's assets occurred on June 3, 1993, within the thirty month "look back period" established by department regulations. The department determined that the plaintiff's ineligibility period began on June 3, 1993, and extended for thirty months. The fair hearing officer upheld the determination, concluding: "[Charles Bezzini] established a revocable trust in March, 1993. The assets at the time of the inception of the trust and for Title XIX eligibility purposes would not be divided, but rather totaled against such assistance limits. Upon the death of the spouse all of the assets due the assistance unit were transferred without receipt of fair value."

The plaintiff appealed the decision to the Superior Court pursuant to General Statutes § 4-183. The trial court upheld the department's decision, concluding that the distribution of assets pursuant to the trust upon Charles Bezzini's death constituted a disqualifying transfer of assets without receipt of fair market value within the thirty month "look back period" from the date of the plaintiff's application for Title XIX benefits. The trial court also determined that the fair hearing officer properly found that Charles Bezzini's intent, at least in part, was to qualify the plaintiff for medicaid benefits.

The plaintiff presents the following arguments in support of her position: (1) Because Charles Bezzini died prior to the plaintiff's application and all of his assets were distributed to persons other than the plaintiff, there were no assets of a spouse "living with" the plaintiff that could be "deemed" to the plaintiff; (2) the distribution of trust assets that occurred upon Charles Bezzini's death did not constitute a "transfer" because, upon his death, the assets passed to the beneficiaries when his interest terminated by reason of death; and (3)

the transfer of asset rules do not apply to a postmortem distribution of property by means of a will and, by analogy, by a revocable trust.

At the outset, we note our standard of review for all of the plaintiff's claims on appeal. Because we are reviewing the decision of an administrative agency, our review is highly deferential. See *Neri* v. *Powers*, 3 Conn. App. 531, 537, 490 A.2d 528, cert. denied, 196 Conn. 808, 494 A.2d 905 (1985); see also General Statutes § 4-183 (j). "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . . *Connecticut Light & Power Co.* v. *Texas-Ohio Power, Inc.*, 243 Conn. 635, 642–43, 708 A.2d 202 (1998)." (Internal quotation marks omitted.) *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 389, 709 A.2d 1116 (1998).

In addition, we note the general framework of the medicaid program. "The federal medicaid program was enacted in 1965 as a cooperative federal-state endeavor designed to provide health care to needy individuals. 42 U.S.C. § 1396 et seq.; *Atkins* v. *Rivera*, 477 U.S. 154, 156, 106 S. Ct. 2456, 91 L. Ed. 2d 131 (1986). The program provid[es] federal financial assistance to States that

choose to reimburse certain costs of medical treatment for needy persons. *Harris* v. *McRae*, 448 U.S. 297, 301, 100 S. Ct. 2671, 65 L. Ed. 2d 784, reh. denied, 448 U.S. 917, 101 S. Ct. 39, 65 L. Ed. 2d 1180 (1980). *Clark* v. *Commissioner*, 209 Conn. 390, 394, 551 A.2d 729 (1988). States are not required to participate in the program, but once a state chooses to adopt the program it must establish a plan conforming with the requirements of the federal statute. Id. Connecticut has elected to participate in the program and has assigned to the department the task of administering the program. General Statutes [Rev. to 1993] § 17-134a et seq.[1] *Matarazzo* v. *Rowe*, 225 Conn. 314, 319, 623 A.2d 470 (1993).

"As originally enacted [the] Medicaid [Act] required participating States to provide medical assistance to categorically needy individuals who received cash payments under one of four welfare programs established elsewhere in the Act. . . . The categorically needy were persons whom Congress considered especially deserving of public assistance because of family circumstances, age, or disability. States, if they wished, were permitted to offer assistance also to the medically needy—persons lacking the ability to pay for medical expenses, but with incomes [or resources] too large to qualify for categorical assistance. *Schweiker* v. *Gray Panthers*, 453 U.S. 34, 37, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981). [*Matarazzo* v. *Rowe*, supra, 225 Conn. 319.] Connecticut has chosen to cover the medically needy." (Internal quotation marks omitted.) *Forsyth* v. *Rowe*, 226 Conn. 818, 823–24, 629 A.2d 379 (1993).

[1] General Statutes (Rev. to 1993) § 17-134a provides in relevant part: "The commissioner of income maintenance is authorized to take advantage of the medical assistance programs provided in Title XIX, entitled 'Grants to States for Medical Assistance Programs,' contained in the Social Security Amendments of 1965 and may administer the same in accordance with the requirements provided therein . . . ."

General Statutes (Rev. to 1993) § 17-134d provides in relevant part: "The commissioner of income maintenance may make such regulations as are necessary to administer the medical assistance program. . . ."

I

The plaintiff first claims that her husband's assets in the revocable trust could not be "deemed" to her because, at the time she applied for medicaid assistance, Charles Bezzini was deceased and, therefore, was not "living with" her. The state responded to this claim at oral argument by indicating that the "deeming" regulation is irrelevant because the sole reason the plaintiff was disqualified from receiving medicaid benefits was due to the transfer of assets by her spouse without the receipt of fair market value. Thus, no assets of her spouse were "deemed" to her as the basis for denying her eligibility. We agree with the state.

The hearing officer based his determination on the specific language of the transfer of assets provision in the department's regulations, not the spousal "deeming" provisions. In addition, both the department and the trial court, in affirming the hearing officer's determination, relied principally on the specific language of the transfer of assets provision. In addition, the plaintiff never raised this claim before the department or the trial court.

Federal law provides the basic guideline to the states concerning ineligibility for Title XIX assistance based on a disqualifying transfer of assets. "[T]he State plan must provide for a period of ineligibility for nursing facility services . . . in the case of an institutionalized individual . . . *who, or whose spouse,* at any time during or after the 30-month period immediately before the date the individual becomes an institutionalized individual . . . or . . . the date the individual applies for such assistance while an institutionalized individual, disposed of resources for less than fair market value." (Emphasis added.) 42 U.S.C. § 1396p (c) (1). Thus, the federal statute specifically directs the state to formulate

a period of ineligibility that includes any transfers by the applicant's spouse.

The department's implementing regulations provide that "[t]ransfers of assets which affect eligibility are those which are made by an institutionalized individual *or his or her spouse* . . . ." (Emphasis added.) Dept. of Income Maintenance, Uniform Policy Manual (1992) § 3027.05 (C). This regulation's General Statement also supports our conclusion. "There is a period established . . . during which institutionalized individuals are not eligible for certain Medicaid services when *they or their spouses* dispose of assets for less than fair market value within certain time limits." (Emphasis added.) Id., § 3027.05 (A). Thus, for determining ineligibility based on a transfer of assets *without the receipt of fair market value*, both the federal statute and the department's regulations explicitly include transfers made by a spouse. We conclude, therefore, that the regulations concerning the deeming of assets between spouses are not relevant to this case because the transfer of asset rules accomplish the same objective without resort to the legal fiction of "deeming."

## II

The plaintiff next claims that the distribution of assets from the revocable trust that occurred on June 3, 1993, did not constitute a "transfer of assets" under the medicaid statutes and regulations because on the date of death, the plaintiff's spouse did not have a property interest that he could transfer. In essence, the plaintiff contends that by funding a revocable trust with assets, with no fair market value received in exchange, those assets are immunized from the medicaid penalty provisions. We are not persuaded.

The fair hearing officer determined that the transfer of assets occurred on June 3, 1993, the date on which the plaintiff's spouse died, when he no longer could

exert any control over the assets in the revocable trust. This conclusion is correct because at any time until his death, the plaintiff's spouse could have revoked the trust and thereby gained access to all of the assets in the trust. Prior to his death, Charles Bezzini's assets in the revocable trust could have been "deemed" to the plaintiff, if she had applied for medicaid. See id., § 4025.65 (A). At the time of his death, the transfer occurred because, for the first time, the assets passed out of his control. Since that transfer occurred within the thirty month period, the assets in the trust are recaptured by the look back provisions. It would, therefore, be incorrect to conclude that the transfer of assets occurred prior to Charles Bezzini's death because legal title did not pass irrevocably. This position is supported generally by our case law concerning property transfers via revocable trusts. See *Bartlett* v. *Bartlett*, 220 Conn. 372, 376–77, 599 A.2d 14 (1991) (beneficiary of revocable trust does not have vested property interest, but rather mere expectancy, until death of settlor renders trust irrevocable); *Rubin* v. *Rubin*, 204 Conn. 224, 230–32, 527 A.2d 1184 (1987) (same); see also *Dalia* v. *Lawrence*, 226 Conn. 51, 60, 627 A.2d 392 (1993) (beneficiary of trust savings account, Totten trust, does not acquire legal interest in funds on deposit until death of settlor); *Salvio* v. *Salvio*, 186 Conn. 311, 322–24, 441 A.2d 190 (1982) (same).

We conclude, therefore, that the transfer of assets occurred upon the death of the plaintiff's spouse by virtue of the trust. A termination of his interest in the trust is equivalent to a transfer to the beneficiaries. The assets distributed according to the terms of the trust are "brought back" from the beneficiaries for consideration for this purpose if the transfer occurred within the thirty months preceding the application for Title XIX benefits. The fact that the plaintiff's spouse had died and the assets had been disposed of prior to the application

does not save them from being considered as existing assets of a spouse. To conclude otherwise would create an exception to the medicaid qualification rules whereby an applicant could avoid the transfer of assets provisions simply by establishing a revocable trust. This result clearly would be contrary to the legislative purpose underlying the medicaid program.[2]

Our Supreme Court's decision in *Forsyth* v. *Rowe*, supra, 226 Conn. 818, is instructive. In *Forsyth*, the court concluded that a trust that was established for the purpose of assisting an incompetent beneficiary with the proceeds from a tort recovery constituted a medicaid qualifying trust that served to disqualify the applicant. Id., 829–30. While that case is factually different from the present case, our Supreme Court's recitation of the policies behind enforcement of the medicaid qualification rules is pertinent to this case. "Our conclusion reflects the legislative concern that the medicaid program not be used as an estate planning tool. The

---

[2] Our review of the department's current regulations reveals further support for the department's conclusion that the plaintiff was ineligible for medicaid assistance benefits. Dept. of Income Maintenance, Uniform Policy Manual (1993) § 4030.80 (B) (2), addresses the treatment of specific types of trusts and provides: "The funds in an inter vivos trust created on or after October 1, 1992, but prior to August 11, 1993, are considered available to an individual or the individual's spouse if:

"a. the individual or the individual's spouse is the settlor of the trust; and

"b. the individual or the individual's spouse is a beneficiary of the trust; and

"c. the individual applies for cash or Medicaid within 30 months subsequent to the establishment of the trust."

While this regulation was not effective at the time the trust was established, it was effective at the time the plaintiff applied for benefits. The Charles Bezzini Revocable Trust was created within the relevant time period. The plaintiff's spouse was the lifetime beneficiary of the trust. The plaintiff applied for medicaid assistance benefits on February 9, 1994, within eleven months of the establishment of the trust. All of the elements of the department's regulation have been satisfied. As a result, the assets in the revocable trust would be considered available to the plaintiff as part of her medicaid application, thereby serving to disqualify her from receiving benefits. This regulatory provision, therefore, provides further support for the department's decision to disqualify the plaintiff from receiving benefits.

medicaid program would be at fiscal risk if individuals were permitted to preserve assets for their heirs while receiving medicaid benefits from the state. Congress enacted the medicaid qualifying trust provision as an addition to the 'provisions designed to assure that individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available.' H. Rep. No. 99-265, 99th Cong., 1st Sess. 71 (1985)." *Forsyth* v. *Rowe*, supra, 828–29.

The policy considerations articulated in *Forsyth* are applicable to this case, despite the fact that a medicaid qualifying trust is not present in this case. Accordingly, we conclude that the distribution of trust assets that occurred upon the death of the plaintiff's spouse constituted a transfer of assets under the medicaid rules that served to disqualify the plaintiff from receiving benefits.

### III

The plaintiff claims finally that the transfer of asset rules do not apply to the postmortem distribution of property through a will, and by analogy they should not apply in this case to the Charles Bezzini trust, which was a will substitute. Specifically, the plaintiff claims that her spouse's revocable trust was an equitable testamentary instrument that provided for their children postmortem. Since the trust served the same function as a will, to pass property to beneficiaries postmortem, the law of wills should be applied to this situation to determine the plaintiff's eligibility for medicaid assistance. We disagree.

A will is a unique kind of transfer, with special rules associated with the proper execution and administration thereof. *Barnes* v. *Viering*, 152 Conn. 243, 246, 206 A.2d 112 (1964); *Crane* v. *Manchester*, 143 Conn. 498,

500–501, 123 A.2d 752 (1956). The creation of a revocable trust is not a testamentary act and need not conform to the requirements of the common-law statute of wills. *Cramer* v. *Hartford-Connecticut Trust Co.*, 110 Conn. 22, 33–34, 147 A. 139 (1929). Under a will, a spouse need only claim the spousal share if disinherited; see General Statutes § 45a-436; *DelVecchio* v. *DelVecchio*, 146 Conn. 188, 192–93, 148 A.2d 554 (1959). Alternatively, a spouse is unable to claim a spousal share against a trust. *Cherniack* v. *Home National Bank & Trust Co.*, 151 Conn. 367, 370–71, 198 A.2d 58 (1964). The fact that the intent of the settlor may have encompassed several goals, including avoiding probate and eliminating estate administration expense, cannot evade a finding that one purpose was to qualify his spouse for medicaid benefits by improper means. The fact that the department could have drafted specific rules for inter vivos trusts applicable at that time does not preclude a determination that this transfer was improper under existing rules. We conclude, therefore, that the rules applicable to wills should not be applied to the plaintiff's situation where a revocable trust was the chosen instrument of the plaintiff's spouse.

The judgment is affirmed.

In this opinion the other judges concurred.