[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties to this administrative anneal are the Wallingford Police Union, Local 1570, Council 15, AFSCME, AFL-CIO ("Union"), the Connecticut State Board of Labor Relations ("Labor Board") and the Town of Wallingford ("Wallingford").
The Union is an employee organization representing, for purposes of collective bargaining, police officers employed by the Town of Wallingford. The Municipal Employees Relations Act ("MERA"), General Statutes § 7-467 et seq. regulates collective bargaining between municipalities and their employees. The Labor Board is empowered under MERA to enforce the provisions of municipal labor law primarily through the vehicle of prohibited practice complaints under General Statutes §7-470. The Union complained to the Labor Board that Wallingford had engaged in certain prohibited practices. The Labor Board dismissed the Union's complaint. It is the decision dismissing the complaint which is the subject of this administrative appeal. This appeal is authorized pursuant to the Uniform Administrative Procedure Act ("UAPA"), General Statutes § 4-166 et seq.
The Labor Board decision was issued on November 24, 1998. The plaintiff filed a timely appeal on January 8, 1999. The answer and record were filed by the Labor Board on February 1, 1999. Briefs were filed by the plaintiff on May 21, 1999, the defendant State Labor Board on June 25, 1999 and the defendant Town of Wallingford on June 28, 1999. The parties were heard in oral argument on August 19, 1999.
The dispute concerns the use by the Oakdale Theater, located in the Town of Wallingford, of special Wallingford constables to perform traffic control duties on event dates. The Oakdale Theater is a regional theater with a capacity of several thousand seats which frequently books popular entertainment. The traffic control work being performed by the constables at the Oakdale events is the type of work which may represent an extra duty work opportunity for Wallingford police officers. CT Page 12760
The collective bargaining agreement in effect from July 1, 1996 through June 30, 2000 provides the following pertinent provisions:
ARTICLE 7
 EXTRA DUTY
 SECTION 2: The term "Extra Police Duty" for the purpose of this Article shall mean police duty that is requested by, and performed for a private agency, and when such agency is required to pay for such service. The Chief may preclude the acceptance of certain types of extra duty assignments which are inconsistent with the interests of the Department and the Town. . . .
 SECTION 9: Temporary and non-classified employees shall not be used to fill Extra Duty assignments. Probationary employees shall not be used, to fill Extra Duty assignments until they have successfully completed the POST Academy and the Department's FTO Program.
(Return of Record ("ROR"), Item 4, Exhibit 3, Agreement, pp. 13-15.)
There had also been a dispute between the parties, as evidenced by the September 25, 1992 grievance filed by the Union, which involved police services being provided by civil preparedness personnel (Auxiliaries). This dispute did not involve the Oakdale Theater. The parties had settled the Auxiliaries' dispute by an agreement dated September 13, 1994 which provided:
 1) The parties acknowledge that the Civil Preparedness Department is separate and distinct from the Police Department, and that the Police Department operates independently of Civil Preparedness unless the latter is activated pursuant to Section 28-7[f] of the Connecticut General Statutes.
 2) The Town of Wallingford shall not utilize Civil Preparedness personnel [auxiliaries] or allow others to utilize them for police duties unless they are activated pursuant to Connecticut General Statutes 28-7[f].
 3) Article 7, Section 8 of the Collective Bargaining Agreement of July 1, 1990, through June 30, 1993, shall be changed to CT Page 12761 read, "Temporary and non-classified employees shall not be used to fill Extra Duty Assignments."
(ROR, Item 4, Exhibit 2, Settlement Agreement dated September 13, 1994.)
The Union's original complaint in the administrative case which underlies this appeal is as follows:
 4. On or about July, 1996, the Employer has allowed Oakdale Theatre Constables to direct traffic and operate light boxes on town streets and property;
 5. Further, a State Police Officer was observed working a construction site on South Turnpike road;
 6. These actions would seem to violate the spirit of agreement on Civil Defense Auxiliaries. . . .
(ROR, Item 4, Exhibit 1, Complaint, ¶¶ 4-6.)
The constables were appointed by the Town of Wallingford, pursuant to § 7-92 of the General Statutes[1].
On or about April 15, 1991, the Oakdale Theater received a certificate (Certificate 1099) from the State Department of Transportation outlining conditions with which the theater was required to comply in conjunction with the expansion of its facility. The pertinent conditions are as follows:
 3. That a police officer control signal be installed at the intersection of the Route 15 ramps and Quinnipiac Street. . . .
 4. That a police officer be provided to operate the traffic signal at the intersection of the Route 15 ramps and Quinnipiac Street during each performance. The exact hours of manual operation will be determined by the Wallingford Legal Traffic Authority. . . .
 10. That a constable be provided for manual traffic control for each event for enter and exit peak periods at the Oakdale Main Drive and South Hartford Turnpike intersection.
(ROR, Item 4, Exhibit 6, Certificate 1099.) CT Page 12762
The Certificate 1099 was amended in April of 1996 to indicate:
 4. That a constable be provided on show nights to direct traffic at the Cook Hill Road and South Hartford Turnpike intersection. . . .
 6. That two constables be provided to manual the traffic signals at Cheshire Road and South Hartford Turnpike and the southbound Route 15 off-ramp to Quinnipiac Street — South Hartford Turnpike. The exact hours of manual operation will be determined by the Wallingford Legal Traffic Authority.
 7. That State Police be provided on Route 15 to monitor traffic for those periods deemed necessary by the Commissioner of Public Safety.
(ROR, Item 4, Exhibit 7.)
Subsequent to the April 1996 amendment, the Oakdale Theater utilized special constables appointed by the mayor of the Town of Wallingford to perform traffic control duties on event nights.
The Union amended its prohibitive practice complaint on August 31, 1998 to allege that the use of constables for traffic control duty amounted to the illegal subcontracting of bargaining unit (extra duty) work.
It is the principle of American Labor Law that when a collective bargaining agreement is in force, the subcontracting or transferring of bargaining unit work to nonbargaining unit personnel is a mandatory subject of bargaining. Thus, an employer may commit an unlawful refusal to bargain or a prohibitive practice when it unilaterally subcontracts or transfers bargaining unit work to non-bargaining unit personnel. FibreboardPaper Products Corp. v. National Labor Relations Board,379 U.S. 203, 13 L.Ed.2d 233, 85 S.Ct. 398 (1964); Connecticut LaborBoard's Decision, City of New Britain, Decision No. 3290 (1995).
The Labor Board found additional facts relating to the history of the traffic control work in the Town of Wallingford. In an arbitration, the arbitrator found that there was no past practice of requiring police officers to direct traffic at construction sites or "traffic sites" in the Town of Wallingford. Amtrak/Railroad police historically controlled traffic at certain intersections in the Town of Wallingford. Civilian crossing CT Page 12763 guards who are not members of the police bargaining unit are responsible for controlling all school crossing traffic sites in the Town of Wallingford.
At the outset, the court notes the "standard of review for all of the plaintiffs claims on appeal. Because [the court is] reviewing the decision of an administrative agency, [the court's] review is highly deferential. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . ." (Citations omitted; internal quotation marks omitted.) Bezzini v. Dept. of Social Services,49 Conn. App. 432, 436 (1998).
The court's "review of an agency's factual determination is constrained by General Statutes § 4-183(j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probate, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of CT Page 12764 review . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v. DPUC,247 Conn. 95, 117-18 (1998).
The Union's claim that the auxiliary dispute settlement agreement was violated by the use of constables by the Oakdale Theater requires a finding that the constables were performing extra duty assignments. That term is used in the settlement agreement and in the collective bargaining agreement. The collective bargaining agreement defines extra duty work to mean "police duty that is requested by, and performed for a private agency, and when such Agency is required to pay for such service." (ROR, Item 4, Exhibit 3, Agreement, p. 14.) The Oakdale Theater never requested police coverage for traffic regulation from the Town of Wallingford. The traffic regulation performed by constables was not necessarily for "police duty." It was a type of work routinely performed in Wallingford by school crossing guards, railroad police, or state police.
The State Department of Transportation specifically directed Oakdale Theater to employ constables to direct traffic, though they would have apparently been satisfied with the work being performed by police officers. However, the Oakdale Theater elected to meets its obligations to the State Department of Transportation by the means of constables. This was the decision of the Oakdale Theater, not the Town of Wallingford. The Union has failed to demonstrate how this was the fault of the Town of Wallingford.
There is substantial evidence in the record to support the Labor Board's conclusion that the work performed by constables at the Oakdale Theater does not fall under their contractual or Labor Board definition of extra duty work. Town of Seymour, Decision No. 3583 (1998).
The Union's subcontracting out claim also fails. Historically in the Town of Wallingford "traffic regulation" was performed by non-bargaining unit as well as bargaining unit personnel. Thus, "traffic regulation" was not bargaining unit work under the Labor Board's City of New Britain analysis. Connecticut Labor Board'sDecision, City of New Britain, Decision No. 3290 (1995). "Extra duty work," which the Oakdale Theater assignments would have CT Page 12765 constituted, is within the discretion of the Town of Wallingford under the collective bargaining agreement. Thus, since the creation of the extra duty work is fully within the discretion of the town to preclude, it cannot meet the standard for bargaining unit work. The Labor Board, though declining to assert jurisdiction over the State Department of Transportation or the town's statutory authority to establish constables (§ 7-92), nonetheless addressed the claims of prohibited practices with respect to the alleged breach of the "auxiliary agreement" and the subcontracting issue.
In this appeal, the Union claims error with respect to the Labor Board's refusal to allow the introduction of evidence relating to the employment status of the constables. The employment status of the constables is irrelevant to the Labor Board decision; thus, it cannot be the basis of relief under the UAPA. Pursuant to the UAPA, an appeal may only be sustained if substantial rights of the plaintiff have been prejudiced by the agency action. See General Statutes § 4-183 (j). In that the Labor Board decision would have been the same whatever the constables' employment status, the Union was not prejudiced by the preclusion of an opportunity to present evidence on the constables' employment status.
The Labor Board decision is affirmed and the appeal is dismissed.
Robert F. McWeeny, J.