## VICTORIA SKINDZIER v. COMMISSIONER OF SOCIAL SERVICES
### (SC 16471)

Sullivan, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued September 19—officially released December 4, 2001

*Maite Barainca,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellant (defendant).

*Deborah J. Tedford,* with whom was *Daniel J. Krisch,* for the appellee (substitute plaintiff).

*Opinion*

SULLIVAN, C. J. The dispositive issue in this case is whether the trial court properly concluded that the creation of a testamentary trust is not a disqualifying transfer of assets under governing medicaid law. The defendant, the commissioner of the department of social services (department), claims that the creation of such a trust is a disqualifying transfer of assets ren-

dering the plaintiff, Victoria Skindzier,[1] ineligible for medicaid benefits. The plaintiff claims that the trial court properly concluded that testamentary trusts are exempt from the law governing transfers of assets. We agree with the plaintiff and affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiff, who suffered from diabetes and Alzheimer's disease, was institutionalized in a nursing home from June, 1995, until her death on October 20, 2000. Her husband, Bernard Skindzier, knowing that he suffered from metastasized prostate cancer, executed a will on March 26, 1996. He died on May 20, 1996. Under the terms of his will, most of his property passed to the trustee of two trusts.[2] The will required that the trustee pay the income from the trusts to the plaintiff during her lifetime and, upon her death, distribute the trust assets to various individuals. The plaintiff's income from Social Security, a pension and the trusts did not cover all of her medical care costs, thus rendering her "medically needy" under medicaid eligibility rules.[3] Accordingly, on December 31, 1997, she applied to the department for medicaid assistance

---

[1] Victoria Skindzier died on October 17, 2000. Thereafter, this court granted the motion of Michelle Gianni, administratrix of the estate of Victoria Skindzier, to be substituted as the party plaintiff. For convenience, however, in this opinion we refer to Victoria Skindzier as the plaintiff.

[2] The trial court found that $675,000 had been distributed to the trustee of the two trusts. The plaintiff represented in her brief, however, that $785,730.70 had been distributed to the trustee. Our review of the Probate Court's administration account of Bernard Skindzier's estate, which was included in the return of record to the trial court, indicates that the trustee received $675,000 in advance distributions, $110,730.70 in "assets on hand," and $7758.02 in "income on hand for distribution," for a total of $793,488.72. The difference between this amount and the amount represented by the plaintiff is the $7758.02 in "income on hand for distribution." The precise amount distributed to the trusts is not relevant, however, to the issues raised on appeal.

[3] "Medically needy" persons lack the ability to pay for their medical expenses but do not qualify as "categorically needy" under the medicaid program because their income exceeds the income eligibility requirements

to cover the shortfall. On July 23, 1998, the department denied the application on the basis of an informal opinion from the office of the attorney general that the creation of the trusts constituted a disqualifying transfer of assets under the governing medicaid rules. The plaintiff requested an administrative hearing to contest the denial. A hearing was held on October 26, 1998, and on March 23, 1999, the fair hearing officer issued a decision affirming the denial of benefits.

The plaintiff appealed to the Superior Court from the department's denial of her application, and the trial court reversed the department's decision. The court's decision was based in part on its interpretation of 42 U.S.C. § 1396p (c) and (d).Title 42 of the United States Code, § 1396p (c) (1) (A), provides that if an individual disposes of assets for less than fair market value on or after the applicable "look-back" date, the individual may be ineligible for medicaid benefits for a specified period of time. Title 42 of the United States Code, § 1396p (c) (1) (B) (i), provides that "[t]he look-back date specified in this subparagraph is a date that is 36 months (or, *in the case of payments from a trust or portions of a trust that are treated as assets disposed of by the individual pursuant to paragraph [3] [A] [iii] or [3] [B] [ii] of subsection [d] of this section, 60 months*) before the date specified in clause (ii)." (Emphasis added.) Section 1396p (d) (2) (A) of title 42 of the United States Code provides that subsection (d) pertains only to trusts established "other than by will." Reading these subsections together, the court concluded that the exemption of testamentary trusts from the provisions of subsection (d) also operated to exempt such trusts from the general transfer of assets provisions of subsection (c).

of the medicaid program. See *Ahern* v. *Thomas*, 248 Conn. 708, 715, 733 A.2d 756 (1999).

The trial court also noted that General Statutes § 45a-486,[4] distinguishes between inter vivos trusts and testamentary trusts. That statute provides that an inter vivos trust established during the look-back period established by 42 U.S.C. § 1396p (c) may be dissolved by court order and the trust assets returned to the settlor. The court concluded that both Congress and the Connecticut legislature intended for testamentary trusts to be exempt from the law governing disqualifying transfers of assets. It further concluded that "application of the medicaid rules to [a] testamentary transfer . . . is untenable absent federal preemption of this state's law of wills."

On appeal, the department claims that the trial court improperly interpreted 42 U.S.C. § 1396p (c) and (d) and argues that Congress intended for transfers by testamentary trust to be treated like other transfers of assets under 42 U.S.C. § 1396p (c). It further argues that the trial court improperly found that treating a testamentary trust as a disqualifying transfer of assets

---

[4] General Statutes § 45a-486 provides in relevant part: "(a) The provisions of this section shall apply to an inter vivos trust (1) established or funded on or after October 1, 1992; (2) established or funded within the same period of time prior to application for public assistance or Medicaid as is specified in Section 1917(c) of the Social Security Act or in a waiver approved by the Secretary of Health and Human Services concerning the disposal of assets for less than fair market value; and (3) in which the settlor or the settlor's spouse is a beneficiary.

"(b) Upon the application of the Department of Social Services, the Superior Court shall terminate an inter vivos trust established by a person or the person's spouse when the person or the person's spouse becomes an applicant for or recipient of public assistance or Medicaid. The Superior Court shall order that the principal and any undistributed income shall be distributed to the settlor of the trust. This section shall not apply if the settlor, the settlor's spouse, a conservator or other legal representative of the settlor or the settlor's spouse, or any other person having a beneficial interest in the trust, establishes by clear and convincing evidence that not one of the principal purposes of the trust was the current or future qualification of the settlor or the settlor's spouse for benefits under Title XIX of the Social Security Act (42 USC 1396 et seq.). . . ."

would constitute preemption of this state's law of wills by federal law. The plaintiff claims that, to the contrary, the trial court properly interpreted the governing statutes and that the testamentary trusts created by the plaintiff's husband did not disqualify her from receiving medicaid assistance. She also argues that subjecting testamentary trusts to transfer of assets rules would, in effect, constitute a mandate to provide for a spouse after death, contrary to this state's law of wills, and would, therefore, involve federal preemption of state law. Finally, the plaintiff claims that the trial court improperly denied her request for attorney's fees pursuant to General Statutes § 4-184a (b). We agree with the plaintiff that the trial court properly concluded that testamentary trusts are not subject to medicaid's disqualifying transfer of assets rules. Accordingly, we need not consider whether a contrary interpretation would constitute federal preemption of state law. We also conclude that the trial court did not abuse its discretion in denying the plaintiff's request for attorney's fees.

As a preliminary matter we set forth the standard of review. "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omit-

ted.) *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 389, 709 A.2d 1116 (1998). Whether a testamentary trust is a disqualifying transfer of assets under 42 U.S.C. § 1396p is a question of statutory interpretation that previously has not been subject to judicial scrutiny. Accordingly, our review is plenary.

"In matters of statutory interpretation, we are guided by well established principles, paramount among which is the principle that [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Id., 391.

"Our analysis begins with an overview of the medicaid program. The program, which was established in 1965 as Title XIX of the Social Security Act and is codified at 42 U.S.C. § 1396 et seq. (medicaid act), is a joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of, among other things, medically necessary nursing facility care. . . . The federal government shares the costs of medicaid with those states that elect to participate in the program, and, in return, the states are required to comply with requirements imposed by the medicaid act and by the secretary of the Department of Health and Human Services. . . . Specifically, participating states are required to ' "develop a plan, approved by the secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance" ' to be provided. . . . [S]ee . . . 42 U.S.C. § 1396a (a) (17).

"Connecticut has elected to participate in the medicaid program and has assigned to the department the task of administering the program. General Statutes § 17b-2[5]. . . . Pursuant to General Statutes §§ 17b-262 and 17b-10,[6] the department has developed Connecticut's state medicaid plan and has promulgated regulations that govern its administration. See [Department of Social Services, Uniform Policy Manual (1993) (Uniform Policy Manual)].

"The medicaid act requires that a state's medicaid plan make 'medical assistance' available to qualified individuals. 42 U.S.C. § 1396a (a) (10). 'The term "medical assistance" means payment of part or all of the cost of . . . care and services . . . [including] nursing facility services . . . .' 42 U.S.C. § 1396d (a) . . . . Participating states are required to provide coverage to certain groups and are given the option to extend coverage to various other groups. The line between mandatory and optional coverage primarily is drawn in 42 U.S.C. § 1396a (a) (10) (A): mandatory coverage is

[5] General Statutes § 17b-2 provides in relevant part: "The Department of Social Services is designated as the state agency for the administration of . . . (8) the Medicaid program pursuant to Title XIX of the Social Security Act . . . ."

[6] General Statutes § 17b-262 provides in relevant part: "The Commissioner of Social Services may make such regulations as are necessary to administer the medical assistance program. . . ."

General Statutes § 17b-10 (a) provides in relevant part: "The Department of Social Services shall prepare and routinely update state medical services and public assistance manuals and general assistance policy manuals . . . containing all departmental policy regulations and substantive procedure. . . ."

Section 17b-10-1 of the Regulations of Connecticut State Agencies provides in relevant part: "Pursuant to section 17b-10 of the Connecticut General Statutes, the Department of Social Services has prepared, and routinely updates, a state eligibility Policy Manual containing all departmental policy regulations and substantive procedures which affect the rights or procedures available to the public. In particular, the Policy Manual outlines the policies and procedures used by the department to implement and enforce federal and state laws for all of the programs which it administers. . . ."

specified in 42 U.S.C. § 1396a (a) (10) (A) (i); and optional coverage is set forth in subsection (a) (10) (A) (ii). In medicaid parlance, individuals who qualify for medicaid benefits pursuant to those subsections are referred to as the 'categorically needy' because, in general, they are eligible for financial assistance under Titles IV-A (Aid to Families with Dependent Children)[7] or XVI (Supplemental Security Income for the Aged, Blind, and Disabled)[8] of the Social Security Act.

"Under the medicaid act, states have an additional option of providing medical assistance to the 'medically needy'—persons who, like the plaintiff, lack the ability to pay for their medical expenses but do not qualify as 'categorically needy' solely because their income exceeds the income eligibility requirements of the applicable categorical assistance program.[9] . . . The 'medically needy' become eligible for medicaid, if the state elects to cover them, by incurring medical expenses in an amount sufficient to reduce their incomes below the income eligibility level set by the state in its medicaid plan. See 42 U.S.C. § 1396a (a) (17) (in determining eligibility, state must take 'costs . . . incurred for medical care' into account); see also 42 C.F.R. § 435.301. 'Only when they "spend down" the amount by which their income exceeds that level, are [medically needy persons] in roughly the same position as [categorically needy] persons . . . [because then] any further expenditures for medical expenses . . . would have to come from funds required for basic necessities.' . . . Connecticut has chosen to cover the medically needy. . . .

"The medicaid act, furthermore, requires participating states to set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent of, medical assistance under

---

[7] See 42 U.S.C. § 601 et seq.

[8] See 42 U.S.C. § 1381 et seq.

[9] See 42 U.S.C. § 1396a (a) (10) (C); 42 C.F.R. §§ 435.300 through 435.350.

the program. 42 U.S.C. § 1396a (a) (17) . . . . The resources standard set forth in Connecticut's state medicaid plan for categorically needy and medically needy individuals is $1600. General Statutes §§ 17b-264 and 17b-80 (c); Uniform Policy Manual, supra, § 4005.10 . . . . Consequently, a person who has 'available' resources; see 42 U.S.C. § 1396a (a) (17) (B); in excess of $1600 is not eligible to receive benefits under the Connecticut medicaid program even though the person's medical expenses cause his or her income to fall below the income eligibility standard.

"Prior to 1986, however, the 'availability' requirement of 42 U.S.C. § 1396a (a) (17) (B) provided a loophole by which individuals anticipating the need for expensive long-term nursing facility care could impoverish themselves and qualify for medicaid assistance while preserving their resources for their heirs. An individual could establish an irrevocable trust that permitted, but did not require, the trustee to disburse the income, but not the principal, of the trust to the individual. The trustee would pay the income from the trust to the grantor until the medicaid transfer 'look back period' had expired and the grantor's transfer of assets to the trust, therefore, would no longer affect his eligibility for medicaid benefits. Thereafter, the trustee would exercise his discretion to withhold payments of trust income from the grantor. As a result, neither the trust principal nor the trust income would be resources 'available' to the grantor within the meaning of § 1396a (a) (17) (B), and the grantor would qualify for medicaid assistance. See H.R. Rep. No. 99-265, pt. 1, pp. 71–72 (1985) . . . .

"Congress, however, tightened the 'availability' loophole provided by § 1396a (a) (17) (B) of the medicaid act by enacting the medicaid qualifying trust provisions set forth at 42 U.S.C. § 1396a (k) (1988). See H.R. Rep. No. 99-265, pt. 1, pp. 71–72 (1985) . . . . '[A] "medicaid

qualifying trust" is a trust . . . established (other than by will) by an individual . . . under which the individual may be the *beneficiary of all or part of the payments from the trust* and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the *distribution to the individual.'*[10] . . . 42 U.S.C. § 1396a (k) (2) (1988). The amount of a medicaid qualifying trust considered 'available' to an applicant for purposes of determining eligibility for medicaid benefits 'is the maximum amount of payments that may be permitted under the terms of the trust to be *distributed to the grantor,* assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount *to the grantor. . . .' . . . .* 42 U.S.C. § 1396a (k) (1) (1988) . . . . Thus, pursuant to § 1396a (k) (1), all possible distributions that a medicaid applicant is capable of receiving from a trust (i.e., trust assets that actually are distributed to the grantor and trust assets that could be, but are not, distributed to the grantor) are considered in determining eligibility for medicaid benefits." (Citations omitted; emphasis in original.) *Ahern* v. *Thomas,* 248 Conn. 708, 713–17, 733 A.2d 756 (1999).

The provisions set forth at 42 U.S.C. § 1396p (d), governing treatment of trust assets, "were enacted in 1993 in an effort to further tighten the 'availability' loophole of 42 U.S.C. § 1396a (a) (17)." Id., 720. Section 1396p (d) (3) (A) (i), pertaining to revocable trusts, provides that "the corpus of the trust shall be considered resources available to the individual . . . ." See also Uniform Policy Manual, supra, § 3028.11 (B). Section 1396p (d) (3) (B) (ii), pertaining to irrevocable

[10] "Contrary to what the term implies, a finding of a medicaid qualifying trust makes one ineligible for medicaid benefits. The term refers to a trust that is deemed to have been created in order to qualify for medicaid benefits and, for policy reasons, is considered an available asset to an applicant." (Internal quotation marks omitted.) *Ahern* v. *Thomas,* 248 Conn. 708, 717 n.15, 733 A.2d 756 (1999).

trusts, provides in relevant part that "any portion of the trust from which . . . no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust . . . to be assets disposed by the individual for purposes of subsection (c) . . . ." See also Uniform Policy Manual, supra, § 3028.11 (C). Section 1396p (d) applies to trusts established after August 11, 1993. See *Ahern* v. *Thomas*, supra, 248 Conn. 721. It does not, however, apply to trusts established by will. See 42 U.S.C. § 1396p (d) (2) (A) (subsection [d] applies to trust established "other than by will").

Disqualifying transfers of assets are generally governed by 42 U.S.C. § 1396p (c). Section 1396p (c) (1) (A) provides that a state's medicaid plan "must provide that if an institutionalized individual or the spouse of such an individual . . . disposes of assets for less than fair market value on or after the look-back date specified in subparagraph (B) (i), the individual is ineligible for medical assistance for services described in subparagraph (C) (i) . . . during the period beginning on the date specified in subparagraph (D) and equal to the number of months specified in subparagraph (E)." See also Uniform Policy Manual, supra, § 3028.05. Section 1396p (c) (1) (B) (i) provides that "[t]he look-back date specified in this subparagraph is a date that is 36 months (or, in the case of payments from a trust or portions of a trust that are treated as assets disposed of by the individual pursuant to paragraph [3] [A] [iii] or [3] [B] [ii] of subsection [d] of this section, 60 months) before the date specified in clause (ii)."

The department argues that the exemption for testamentary trusts provided by 42 U.S.C. § 1396p (d) (2) (A) applies only to subsection (d), and that testamentary trusts are not exempt from the general transfer of assets provisions of subsection (c). We disagree.

As we previously have noted in this opinion, 42 U.S.C. § 1396p (d) (3) (B) (ii) provides that "any portion of the [irrevocable] trust from which . . . no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust . . . to be assets disposed by the individual for purposes of subsection (c) . . . ." Section 1396p (d) (2) (A), however, provides that subsection (d) applies only to trusts established "other than by will." Thus, subsection (d) specifically provides that the establishment of a trust may constitute a disqualifying disposal of assets, and also specifically exempts testamentary trusts from that provision. We cannot conclude that, having exempted testamentary trusts from the specific transfer of assets rules pertaining to trusts, Congress intended for the more general transfer of assets provisions of subsection (c) to apply. See *Sullivan* v. *State*, 189 Conn. 550, 555–56 n.7, 457 A.2d 304 (1983) ("when general and specific statutes conflict they should be harmoniously construed so the more specific statute controls" [internal quotation marks omitted]).

Our conclusion that testamentary trusts are not governed by the general transfer of assets provisions of 42 U.S.C. § 1396p (c) is bolstered by the federal health care financing administration's implementing regulations dealing with the establishment of trusts. Section 3259.6 (G) of the State Medicaid Manual, "a publication of the Department of Health and Human Services that explains to the states how the health care financing administration applies statutory and regulatory provisions in administering the medicaid program"; *Ahern* v. *Thomas*, supra, 248 Conn. 720–21; provides in relevant part: "When a nonexcluded asset is placed in a trust, a transfer of assets for less than fair market value generally takes place. An individual placing an asset in a trust generally gives up ownership of the asset to the trust. If the individual does not receive fair compensation in

return, you can impose a penalty under the transfer of assets provisions. *However, the trust provisions contain specific requirements for treatment of assets placed in trusts. . . .* [T]hese requirements deal with counting assets placed in trusts as available income, available resources, and/or a transfer of assets for less than fair market value, depending on the circumstances of the particular trust. Application of the trust provisions, along with imposition of a penalty for the transfer of the assets into the trust, could result in the individual being penalized twice for actions involving the same asset. To avoid such a double penalty, application of one provision must take precedence over application of the other provision. Because the trust provisions are more specific and detailed in their requirements for dealing with funds placed in a trust, the trust provisions are given precedence in dealing with assets placed in trusts. *Deal with assets placed in trusts exclusively under the trust provisions* (which, in some instances, require that trust assets be treated as a transfer of assets for less than fair market value)." (Emphasis added.) State Medicaid Manual § 3259.6 (G).

The department argues, however, that because subsection (c) specifically exempts certain trusts from its disqualifying transfer of assets provisions,[11] the fact that a specific exemption for testamentary trusts is not included in that section indicates an intent to subject them to the transfer provisions. We disagree. Rather, we conclude that Congress did not need to include a

[11] Title 42 of the United States Code, § 1396p (c) (2) (B), provides in relevant part that the ineligibility provisions of subsection (c) (1) do not apply to the extent that assets "(iii) were transferred to . . . a trust (including a trust described in subsection [d] [4] of this section) established solely for the benefit of, the individual's child described in subparagraph (A) (ii) (II), or

"(iv) were transferred to a trust (including a trust described in subsection [d] [4] of this section) established solely for the benefit of an individual under 65 years of age who is disabled (as defined in section 1382c [a] [3] of this title) . . . ."

specific exemption for testamentary trusts in subsection (c) because it already specifically had exempted them from subsection (d), which section subjects trusts to the disqualifying transfer of assets rules of subsection (c) in the first instance.

Nor are we persuaded by the department's argument in its brief that, "while testamentary trusts are treated more favorably than inter-vivos trusts in terms of deeming their funds available and countable, [all] transfers by will or otherwise are treated the same." First, we note that, as it applies to testamentary trusts, this interpretation simply is contradicted by the plain language of § 1396p (d) (2) (A), which, as we have noted, specifically exempts testamentary trusts from *all* of the provisions of subsection (d), including the disposal of assets provisions of § 1396p (d) (3) (B) (ii). We also note that, although technically distinct, the availability provisions and the transfer of assets provisions have essentially identical functions, namely, to ensure that certain assets that, in fact, are not available to an individual will nevertheless be considered as if they were available in determining the individual's medicaid eligibility. We can perceive no reason for Congress to have exempted testamentary trusts from the rule that trust assets that could have been, but were not, paid to an individual are to be considered available to the individual,[12] but *not* to have exempted them from the rule that when trust

[12] Title 42 of the United States Code, § 1396p (d) (3) (A), provides in relevant part: "In the case of a revocable trust—

"(i) the corpus of the trust shall be considered resources available to the individual . . . ."

Title 42 of the United States Code, § 1396p (d) (3) (B), provides in relevant part: "In the case of an irrevocable trust—

"(i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual . . . ."

assets cannot be paid out under any circumstances, they are to be considered assets disposed of by the individual.[13]

Finally, the department argues that the exemption of testamentary trusts from the transfer of assets provisions is contrary to the underlying purpose of the transfer of assets rules, namely, to ensure that the medicaid program provides necessary medical care only to people who otherwise would be too poor to afford it. In support of this argument, it relies on *Bezzini* v. *Dept. of Social Services*, 49 Conn. App. 432, 715 A.2d 791 (1998). In *Bezzini*, the Appellate Court considered "whether a transfer of assets from the plaintiff's spouse to beneficiaries other than the plaintiff, taking effect upon the death of the spouse, pursuant to the terms of a revocable inter vivos trust, render[ed] the plaintiff ineligible for Title XIX medicaid benefits." Id., 434. The plaintiff's husband, who had been diagnosed with prostate cancer, had established a revocable inter vivos trust and, in the month before his death, had transferred all of his and the plaintiff's assets into the trust. Pursuant to the terms of the trust, upon his death, the assets were distributed to their two sons. Several months after her husband's death, the plaintiff entered a nursing home and, while in the nursing home, applied for medicaid assistance. Id., 434–35. The department determined that the plaintiff was subject to an ineligibility period of thirty months from the date of her husband's death because the distribution of the trust assets at that time had been a disqualifying transfer of assets. Id., 435. The plaintiff appealed from that decision to the Superior

[13] The department argues that Congress subjected inter vivos trusts to harsher availability rules than testamentary trusts because of the historic abuse of inter vivos trusts by individuals attempting to qualify themselves or their spouses for medicaid. This argument proves too much, however, as it would also explain why Congress exempted testamentary trusts from the transfer of assets rules.

Court, which affirmed the decision; id.; and the plaintiff appealed to the Appellate Court.

Because the trust under consideration in *Bezzini* had been established before August 11, 1993,[14] the Appellate Court applied the relevant provisions of Title XIX as they existed before the 1993 amendments and not, as the parties in this case appear to have assumed, 42 U.S.C. § 1396p (d). See *Ahern* v. *Thomas*, supra, 248 Conn. 721 (§ 1396p [d] applies only to trusts established after August 11, 1993). Specifically, the court applied the general transfer of assets provisions set forth at 42 U.S.C. § 1396p (c) (1) (1988).[15] See *Bezzini* v. *Dept. of Social Services*, supra, 49 Conn. App. 438.

---

[14] The trust was established on March 11, 1993. See *Bezzini* v. *Dept. of Social Services*, supra, 49 Conn. App. 434.

[15] Title 42 of the United States Code, § 1396p (c) (1) (1988), provides in relevant part: "[T]he State plan must provide for a period of ineligibility for *nursing facility services . . . in the case of an institutionalized individual . . .* who, at any time during or after the 30-month period immediately before the date the individual becomes an institutionalized individual . . . or . . . the date the individual applies for such assistance while an institutionalized individual, disposed of resources for less than fair market value. . . ."

We note that the court did not apply, or even refer to, the medicaid qualifying trust provisions set forth at 42 U.S.C. § 1396a (k) (1988). That section, unlike § 1396p (d) (3) (B) (ii), does not specifically provide that the establishment of a trust may be treated as a disqualifying transfer of assets when the assets are completely unavailable to the settlor or the settlor's spouse, but provides only that "the amounts from the trust deemed available to [the individual establishing the trust, or the individual's spouse] . . . is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to [the individual, or the individual's spouse], assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the [individual, or the individual's spouse]." The court did state, however, that "a medicaid qualifying trust is not present in this case." *Bezzini* v. *Dept. of Social Services*, supra, 49 Conn. App. 442. In reaching this conclusion, the court may have relied on 42 U.S.C. § 1396a (k) (2) (1988), which defines "medicaid qualifying trust" as "a trust . . . established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual." The plaintiff

The court concluded that, under 42 U.S.C. § 1396p (c) (1) (1988), the distribution of the assets in the inter vivos trust at the time of the plaintiff's husband's death constituted a disqualifying transfer of assets. Id., 442. The court determined that, before his death, when the plaintiff's husband could have revoked the trust, the trust assets could have been "deemed" to the plaintiff under the governing regulations. Id., 440, citing Dept. of Social Services, Uniform Policy Manual (1992) § 4025.65 (A). It further determined that, because title to the assets passed irrevocably at the time of death, a disqualifying transfer occurred at that time. *Bezzini* v. *Dept. of Social Services*, supra, 49 Conn. App. 440. The court reasoned that exempting such trusts from the transfer of assets rules would run counter to "the legislative concern that the medicaid program not be used as an estate planning tool. The medicaid program would be at fiscal risk if individuals were permitted to preserve assets for their heirs while receiving medicaid benefits from the state." (Internal quotation marks omitted.) Id., 441–42, citing *Forsyth* v. *Rowe*, 226 Conn. 818, 828–29, 629 A.2d 379 (1993) (settlement trust established by applicant's conservator is medicaid qualifying trust).

The court also noted that the creation of a revocable trust was not a testamentary act, which it appears to have assumed would not be subject to the transfer of assets rules. *Bezzini* v. *Dept. of Social Services*, supra, 49 Conn. App. 442–43. Although the department relies on *Bezzini* for the proposition that medicaid should

in *Bezzini* was not a beneficiary of the trust under review in that case. The court also noted that the department's regulations pertaining to inter vivos trusts provided "further support" for its conclusion. See id., 441 n.2, citing Uniform Policy Manual, supra, § 4030.80 (B) (2) (providing that funds in inter vivos trusted created on or after October 1, 1992, but prior to August 11, 1993, are considered available to applicant for medicaid if applicant or applicant's spouse is settlor of trust, applicant or applicant's spouse is beneficiary of trust and applicant applies for cash or medicaid within thirty months after establishment of trust).

not be used as an estate planning tool, it argues that the court's assumption in *Bezzini* that dispositions by will, including testamentary trusts, are not subject to transfer of assets rules was both dicta and incorrect.[16]

We conclude that the Appellate Court's conclusion in *Bezzini* that inter vivos trusts that become irrevocable because of the death of the settlor are subject to the general disqualifying transfer of assets rules does not support the department's position in this case. That conclusion was based on the Appellate Court's interpretation of the provisions of the 1988 amendments, specifically, 42 U.S.C. § 1396p (c) (1) (1988), which are inapplicable here. In the absence of a specific statute providing that the establishment of an irrevocable inter vivos trust may be treated as a transfer of assets, the Appellate Court relied on the legislative policy underlying the transfer of assets rules to reach its conclusion that such trusts are subject to general transfer of assets rules. That conclusion, however, was codified in the 1993 revisions to the medicaid eligibility rules, specifically, 42 U.S.C. § 1396p (d) (3) (B) (ii). As we already have concluded, testamentary trusts are specifically exempted from that provision. See 42 U.S.C. § 1396p

---

[16] The plaintiff concedes that the basis for that assumption is unclear, but speculates that the Appellate Court may have relied on one or more of the provisions of 42 U.S.C. § 1396p (d). As we have noted, however, that statute was not applicable to the trust under consideration in *Bezzini*. Furthermore, although 42 U.S.C. § 1396a (k) (1988), governing "medicaid qualifying trusts," applies only to trusts established "other than by will," the Appellate Court concluded that the trust under review in that case was not a "medicaid qualifying trust." *Bezzini* v. *Dept. of Social Services*, supra, 49 Conn. App. 442. We need not consider in this case, however, whether the court's assumption was either unfounded or dicta, because, regardless of whether testamentary trusts are subject to the general transfer of assets provisions of 42 U.S.C. § 1396p (c) (1) (1988), for the reasons previously discussed, we have concluded that they are not subject to the general transfer of assets provisions enacted in 1993 and codified at § 1396p (c). We also need not consider in this case whether the court in *Bezzini* properly concluded that the trust in that case was a valid inter vivos trust rather than a trust testamentary in effect.

(d) (2) (A). Accordingly, even if we were to agree with the department that, contrary to the court's statement in *Bezzini*, dispositions by will and, specifically, testamentary trusts are, under the 1988 amendments, subject to general transfer of assets rules, and that the exemption of testamentary trusts from those rules in the 1993 revisions created a loophole whereby an individual may preserve assets for his or her heirs at the expense of the medicaid program, we have no authority to impose a different rule simply because, in our opinion, it would better implement the legislative policy of minimizing the fiscal risk to that program.[17] "[This] court is precluded from substituting its own ideas of what might be a wise provision in place of a clear expression of legislative will." (Internal quotation marks omitted.) *Fernandes* v. *Rodriguez*, 255 Conn. 47, 58, 761 A.2d 1283 (2000).

Because we conclude that testamentary trusts are exempt from the transfer of assets rules of 42 U.S.C. § 1396p (c) and (d), we need not consider whether subjecting testamentary trusts to those provisions

---

[17] Indeed, it is possible that Congress recognized that it was creating a loophole in the disqualifying transfer of assets provision by exempting testamentary trusts, but simply did not want medicaid rules to interfere with an individual's estate planning objectives, even if those objectives include the preservation of assets for heirs at the expense of the medicaid program. The plaintiff argues that the disposal of assets by will is subject to a different rule than the disposal of assets during a lifetime because there is no requirement under state law that an individual provide for a surviving spouse in a will and a surviving spouse would have no recourse if disinheritance were to be considered a disqualifying transfer of assets. We are not persuaded, however, that that analysis adequately accounts for the exemption of testamentary trusts from transfer of assets rules. We note that an individual is also free to make a gift or otherwise dispose of his own assets during his lifetime, depriving his spouse of any share in the property. See *Dalia* v. *Lawrence*, 226 Conn. 51, 61, 627 A.2d 392 (1993) (individual may make valid gift or otherwise dispose of property to third party during lifetime without consent of spouse). Such transfers may also impoverish the spouse against the spouse's will and may also be irrevocable, but there is no dispute that they are subject to disqualifying transfer of assets rules.

would constitute a preemption of Connecticut's law of wills by federal law.

Turning to the plaintiff's claim for attorney's fees, we note that the plaintiff has not filed a cross appeal from the trial court's ruling that she was not entitled to such fees. Nevertheless, because the record is adequate for review, we will consider this claim. General Statutes § 4-184a (b) provides in relevant part that "[i]n any appeal by an aggrieved person of an agency decision taken in accordance with section 4-183 . . . the court may, in its discretion, award to the prevailing party, other than the agency, reasonable fees and expenses in addition to other costs if such prevailing party files a request for an award of reasonable fees and expenses within thirty days of the issuance of the court's decision and the court determines that the action of the agency was undertaken without any substantial justification." Accordingly, we review the trial court's decision for an abuse of discretion.

"[W]e construe the phrase 'without any substantial justification' to mean entirely unreasonable or without any reasonable basis in law or fact. In our view, this demanding standard furthers the legislature's intent by striking a balance between compensating aggrieved litigants for unjustified agency action, and ensuring that not all agency actions that are subject to judicial reversal for legal error result in an award of attorney's fees." *Burinskas* v. *Dept. of Social Services*, 240 Conn. 141, 156, 691 A.2d 586 (1997). "Although we conclude that the department's practice [of treating the establishment of a testamentary trust as a disqualifying transfer of assets] is contrary to the relevant legislation, it does not follow necessarily that its action was unreasonable or without any basis in law or fact. The practice was based on the department's good faith interpretation of the legislative mandate to [minimize the fiscal risk to the medicaid program]. It was not entirely unreasonable

for the department to conclude that the law might permit such measures." *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, supra, 244 Conn. 401. Accordingly, we conclude that the trial court was within its discretion in denying the plaintiff's request for attorney's fees.

The judgment is affirmed.

In this opinion the other justices concurred.